**Virginia I. JONES, Appellant,**

v.

**MEAT PACKERS EQUIPMENT CO., a California corporation; Chemetron Corporation; and Allegheny International, Inc., Appellees,**

v.

**ALLEN BRADLEY COMPANY, Third-Party Defendant.**

No. 82–1658.

United States Court of Appeals, Fourth Circuit.

Argued Feb. 8, 1983.

Decided Dec. 23, 1983.

Keith H. Bangel, Portsmouth, Va. (Bangel, Bangel & Bangel, Portsmouth, Va., Edward L. Wolf, Segal, Wolf, Berk & Gaines, Philadelphia, Pa., on brief), for appellant.

William L. Dudley, Robert A. Rapaport, Norfolk, Va. (Harlan, Knight, Dudley & Pincus, Norfolk, Va., on brief), for appellees.

Before HALL and PHILLIPS, Circuit Judges, and BUTZNER, Senior Circuit Judge.

BUTZNER, Senior Circuit Judge:

Virginia Jones appeals from a judgment in favor of Meat Packers Equipment Company (MEPACO) and affiliated companies in an action seeking compensation for injuries alleged to have been caused by defective machinery. Jurisdiction is based on diversity of citizenship. Her complaint, relying on Virginia law, alleges breach of warranty and tort. We conclude that the district court erred by submitting the issue of contributory negligence to the jury, and we therefore vacate the judgment and remand the case for a new trial.

I

Virginia Jones, a sanitation worker at the Gwaltney meat packing plant in Smithfield, Virginia, was injured while cleaning a machine that was designed and manufactured by MEPACO. The machine is a 1000-pound capacity meat mixer-blender. It is a stainless steel tub containing two metal spiral ribbon agitators, which are operated by stop, start, reverse, and discharge buttons in a control box on the side of the machine. A positive disconnect switch, which cuts off the main power supply into the machine, is located on the right rear corner.

Jones was cleaning the inside of the mixer-blender with a scouring pad. Although the stop button was engaged, the machine suddenly activated. The agitators cut off part of her right hand.

Gwaltney had purchased the mixer-blender from MEPACO in 1971. The purchase order expressly warranted that the machine was "merchantable, fit for the purpose intended, of good workmanship and material, and free from patent and latent defects."

Around 1974, MEPACO learned that a mixer-blender at another meat packing plant had activated by itself and amputated the fingers of a sanitation worker who was cleaning it. Consequently, in June of 1974, MEPACO sent a letter and metal signs by certified mail to all mixer-blender owners, including Gwaltney. The letter stated that the company must instruct its employees to keep their hands out of the machine; that means for disconnecting power should be provided for use if it became necessary to enter the machine; and that the stop button was equipped with a safety locking device to prevent the machine from starting up accidently during cleaning operations. The metal signs which, like the plastic ones they were intended to replace, stated: "DANGER KEEP HANDS OUT OF DOOR OPENING." Neither the letter nor the metal signs expressly adverted to the danger of the machine starting even when the stop button was engaged.

According to Gwaltney's personnel, the machine began activating by itself shortly after its arrival in 1971, and it continued to do this periodically up to the time of Jones's accident in 1979. Gwaltney's maintenance team believed condensation created by the contrast between the room temperature and hot water used to clean the machine caused short-circuits in the control box. The maintenance team tried to fix the problem several times by repairing, and eventually replacing, the original control box.

Jones, who then was 18 years old, had been employed at Gwaltney for approximately two weeks. A sanitation crew leader had instructed her how to clean the mixer-blender. She was told to spray down the entire machine while the machine was running. Next, after pressing the stop button to turn the machine off, she was instructed to reach into it through the discharge doors or lid and scrub off any remaining meat particles with a scouring pad.

It is undisputed among Gwaltney's personnel that at the time of Jones's accident there were no warning signs or instructions affixed to or posted near the machine. There is no evidence that Jones was ever told that the machine could activate by itself. Finally, there is no evidence that she was ever told to turn the positive disconnect switch off before cleaning the inside of. the machine.

## II

■ A federal standard determines the sufficiency of the evidence for submission of an issue to a jury. In the absence of evidence, or reasonable inferences that can be drawn from the evidence, disclosing that Jones was negligent, the issue of contributory negligence should not have been submitted to the jury. *See Wratchford v. S.J. Groves & Sons Co.,* 405 F.2d 1061, 1066–67 (4th Cir.1969). The parties briefed this issue by citing Virginia, instead of federal, authorities. Their mistake, however, is of little consequence, for in the context of this case, the allocation of functions between a Virginia trial judge and a jury is essentially similar in a federal court. *See Nehi Bottling Co. v. Lambert,* 196 Va. 949, 955, 86 S.E.2d 156, 159 (1955).

■ The parties do not dispute that Jones was cleaning the mixer-blender precisely as she had been instructed. All of Gwaltney's personnel who had observed the machine around the time of the accident and during Jones's two-week employment testified that there were no warning signs of any kind on it. There was no evidence to suggest Jones had otherwise been informed of the danger that the machine would start even though the stop button had been pushed. This defect in the machine's mechanism was not apparent to her. Furthermore, an employee who is injured while performing a job in accordance with instructions provided by the employer is not guilty of contributory negligence unless the danger is so apparent that no reasonable person would encounter it. *See Norfolk &*

*Western R.R. v. Ward,* 90 Va. 687, 692, 19 S.E. 849, 850 (1894).

■ We cannot accept MEPACO's argument that the jury could have found Jones contributorily negligent because common sense should have alerted her not to put her hand in the machine after the stop button caused it to cease operation. The evidence discloses that MEPACO's engineers who designed the machine initially failed to realize that it was likely to start while being cleaned after the stop button was pushed. Consequently, it is not surprising that Jones lacked the expertise to detect the machine's latent defect. MEPACO's argument about common sense, for which it cites no authority, provides insufficient proof for submitting the issue of contributory negligence to the jury.

The error in submitting the issue of contributory negligence to the jury was compounded when the district court omitted to explain to the jury that contributory negligence was not a bar to recovery on Jones's alternative claim of breach of warranty. *See Matthews v. Ford Motor Co.,* 479 F.2d 399, 401 n. 1 (4th Cir.1973); *Brockett v. Harrell Bros. Inc.,* 206 Va. 457, 143 S.E.2d 897 (1965).

■ We must reject MEPACO's assertion that the error was harmless. In Virginia, contributory negligence is a complete bar to an action based on negligence. For this reason, it is impossible to ascertain from the jury's general verdict what effect the issue of contributory negligence had on their decision.

### III

Because the case is remanded for a new trial, we will comment briefly on other assignments of error. The court correctly explained to the jury MEPACO's warranty, but it omitted, probably inadvertently, part of the instruction that dealt with the consequences of a breach of warranty. On retrial, this also should be explained to the jury.

■ The court did not err in declining to give an instruction offered by Jones con-

cerning MEPACO's decision not to call one of its employees, who was present, as a witness. Jones introduced parts of the witness's deposition, and the court afforded her attorney an opportunity to call the witness for further examination. The attorney declined the offer. Because the witness was available to both parties, the instruction tendered by Jones was misleading and inappropriate. *See Neeley v. Johnson,* 215 Va. 565, 574, 211 S.E.2d 100, 107–08 (1975).

■ In Virginia, a manufacturer's duty to warn about dangers associated with a product's use is governed by § 388 of the Restatement (Second) of Torts (1965). *See Featherall v. Firestone Tire & Rubber Co.,* 219 Va. 949, 962, 252 S.E.2d 358, 366 (1979). We have previously concluded that Virginia law includes comment n of § 388, "Warnings given to third person." *See Barnes v. Litton Indus. Products, Inc.,* 555 F.2d 1184, 1188 (4th Cir.1977). Comment n discusses various factors that determine whether giving a warning to a third person is sufficient to relieve the supplier of liability. These include the reliability of the third person as a conduit of the information and the magnitude of the risk compared with the burden imposed on the supplier by requiring that he directly warn all users. *See Russell v. G.A.F. Corp.,* 422 A.2d 989, 992–93 (D.C. 1980).

■ Despite MEPACO's argument to the contrary, we believe that the district court properly submitted the question of MEPACO's negligence to the jury. On the question of intervening cause, the court correctly instructed the jury that if Gwaltney's alterations caused Jones's injury, they should find for MEPACO. The court's instructions on MEPACO's duty to warn and the scope and sufficiency of the content of warning adequately explained the principles of § 388.

With respect to the method of warning, the court told the jury that an adequate warning to Jones's employer was sufficient and that MEPACO had no duty to warn Jones directly. We believe that this part of the instruction was erroneous.

**374**

Jones, of course, does not contend that MEPACO had to personally or directly instruct every employee who used the machine about its dangers. Relying on comment n, she insists that it was MEPACO's duty to place an adequate warning sign on the machine. MEPACO's letter to the employer, she asserts, did not discharge its duty under § 388 as amplified by comment n.

A jury could reasonably find that MEPACO knew the machine was likely to start even when the controls were in the stop position, that it knew that this defect presented grave danger to people who cleaned the machines, and that it did not adequately alert a cleaning person of the danger. The jury could also find that MEPACO could have warned employees using the machine simply by placing a sign on it that cautioned about the need to disconnect the power supply before putting their hands inside. Against this background, comment n of § 388 counsels that a factual issue arises about the adequacy of a warning to an intermediary rather than to the person directly exposed to the danger. It was for the jury to determine in light of the factors mentioned in comment n—and not for the judge to rule as a matter of law—whether MEPACO acted unreasonably in relying on Gwaltney to warn its employees. *See Hopkins v. Chip-In-Saw, Inc.*, 630 F.2d 616, 619–21 (8th Cir.1980); *Barnes v. Litton Indus. Products, Inc.*, 555 F.2d 1184, 1188 (4th Cir. 1977); *Dougherty v. Hooker Chemical Corp.*, 540 F.2d 174, 178–82 (3d Cir.1976); 1A Frumer and Friedman, *Products Liability* § 8.03[3], at 173–82 (1975).

The judgment of the district court is vacated, and the case is remanded for further proceedings consistent with this opinion. Jones is entitled to her costs on appeal.