**Alexandria**

BARRY HILTON WYLE

v.

PROFESSIONAL SERVICES INDUSTRIES, INC. and

CIGNA PROPERTY & CASUALTY INSURANCE
COMPANY

No. 0996-90-4

Decided June 18, 1991

COUNSEL

Michael Rankin (Frank B. Tavenner, on briefs), for appellant.

Charles F. Midkiff (James G. Muncie, Jr.; Midkiff & Hiner, on brief), for appellees.

OPINION

MOON, J.—Barry H. Wyle seeks reversal of an Industrial Commission decision denying him benefits because of his willful misconduct. We hold that the evidence was not sufficient to show that he was guilty of willful misconduct by failing to report an OSHA violation. However, we reverse and remand for the Industrial Commission to reconsider whether his willful misconduct of voluntary intoxication was a proximate cause of his injuries.

Code § 65.1-38 provides in pertinent part:

No compensation shall be allowed for an injury or death (1) Due to the employee's willful misconduct . . . . (3) Due to intoxication, or (4) Due to willful failure or refusal to use a safety appliance or perform a duty required by statute or the willful breach of any rule or regulation adopted by the employer and approved by the Industrial Commission and brought prior to the accident to the knowledge of the employee.

The burden of proof shall be upon him who claims an exemption or forfeiture under this section.

Barry Wyle was employed by Professional Services Industries (PSI) as a roofing inspector for a period of four months prior to his injury on August 12, 1988. He was aware that PSI had a rule about working under the influence of alcohol and that the rule was enforced. He had previously been reprimanded about his drinking activities. He was a long time alcoholic and drank daily. His duties included the observation and inspection of roofs in the process of demolition and replacement by contractors. He routinely

climbed up and down ladders. The commission made a finding that "as a part of his duties he was to observe safety violations and report them to the job foreman and then submit something in writing to insure their correction."

Wyle admitted that on the day prior to his injury he drank a six pack of twelve ounce beers and nearly a whole bottle of gin before 11:30 p.m., but he claimed that he drank nothing thereafter. His wife testified that on August 12, he was intoxicated at 2:00 a.m., although he could speak coherently. She did not see him again before he left home for work. He drove from his home to the site of work at Drew Elementary School where Roofer's, Inc., one of his employer's clients, was working on a roof. Wyle had been working there over a three week period. When he arrived at the work site, he reviewed the project with another of his employer's inspectors. In the process he climbed the ladder to the roof.

Wyle later ascended a different ladder to speak to Tom Riser, a foreman with Roofer's, Inc. On direct examination, Wyle testified that when he went up the ladder he did not notice that it was not tied off and did not have safety grips, a violation of OSHA regulations. However, on cross-examination, Wyle admitted that he noticed the ladder was not properly tied off when he went up the ladder but decided not to mention it to the foreman as he had ascended it before without difficulty. Mr. Riser testified that during the discussion with Wyle, Wyle told him that he had a tooth pulled the night before and had stopped the pain "with a bottle." In addition, Wyle told him that he had taken something for it that morning and had "gotten a bottle." Riser said that Wyle smelled like he had just had a drink of whiskey. When Wyle stepped on the ladder to descend to the ground, the ladder slipped backward two or three feet. Wyle tried to grab onto the edge of the roof but fell to the ground twelve feet below.

Wyle contended that, although he was suffering a hangover that morning, he could not have prevented the fall if he had been sober. In direct contradiction, Mr. Riser testified that even with the ladder sliding out, Wyle would not have fallen if he had not been intoxicated. A blood sample taken from Wyle at 4:09 p.m., four hours after the accident, revealed a 132 mg/dl of alcohol in the bloodstream. Dr. William D. Lerner, a professor of medicine at the University of Birmingham and an expert in the field of alcoholism, explained that assuming a noon time accident and no ad-

ditional alcohol consumption at the time of the accident, Wyle must have had a blood alcohol level ranging between 210 mg/dl and 230 mg/dl, figures in excess of twice the level required to convict someone of driving under the influence in Virginia. Dr. Lerner also opined that had Wyle stopped drinking at 11:30 p.m. the night prior to his injury, his blood alcohol level would have ranged from 460 mg/dl to 510 mg/dl, a lethal level. As a result, Dr. Lerner testified that Wyle must have consumed alcoholic beverages some time after awaking the day of the accident. He also expressed the opinion that alcohol may have played a major role in the accident.

Dr. Theodore Clark, a neuropsychiatrist at Dartmouth Clinic in Southern Pines, North Carolina, testified that Wyle was a "functional alcoholic, and further that chronic alcoholics can do complicated jobs with a blood alcohol level ranging anywhere from 150 mg/dl to 250 mg/dl," which would explain Wyle's ability to ascend and descend ladders two times earlier that day without trouble. Dr. Joel Silverman, Professor and Chairman of the Department of Psychiatry at Virginia Commonwealth University, agreed with Dr. Lerner's analysis about drinking on the job and his computations, but also testified that chronic alcoholics metabolize alcohol more rapidly. He disputed the category of "functioning alcoholic" in textbooks and expressed the opinion that falling blood alcohol levels in alcoholics create anxiety, decreased judgment, and instability of gait and balance which were "highly related to the cause of the fall within a reasonable degree of medical certainty."

We agree with Wyle that there is no evidence of an existing safety rule concerning how ladders must be tied off. The Industrial Commission had not approved such a rule. Likewise, the employer had not adopted such a rule and no such rule was brought to Wyle's attention prior to the accident. Mr. Wyle admitted that the ladder not being tied off could have been a safety violation under OSHA regulations. OSHA Regulations, 29 C.F.R. § 1926.450 (1990) provides in pertinent part:

Ladders . . .

(6) Portable ladder feet shall be placed on a substantial base, and the area around the top and bottom of the ladder shall be clear.

* * *

(10) Portable ladders in use shall be tied, blocked, or otherwise secured to prevent their being displaced.

OSHA regulations are general rules designed to make a safer workplace for the employees on a job and do not constitute work rules for employees. In order for an OSHA rule to bar the employee's claim, it would have to define some clear and unambiguous duty on the part of Wyle. *See Williams v. Benedict Coal Corp.*, 181 Va. 478, 480, 25 S.E.2d 251, 253 (1943). OSHA regulations are requirements placed on the employers for the benefit of employees and are not rules of conduct for employees. *See* 29 U.S.C. § 651 (1976). There is no evidence Wyle was required to secure the ladder. That duty was imposed on Roofer's, Inc. Wyle was not required to inspect ladders before ascending and descending in the course of his duties.

The Industrial Commission found that Wyle was a "safety inspector." The record shows that Wyle's primary duty was to observe the application of roofing products to the roofs under repair and to report results to his employer, who is a roofing consultant firm. If Wyle was aware of a safety violation, he was to bring it to the attention of the foreman on the job and subsequently to make note of it in his report to PSI. No evidence was offered that Wyle had authority to shut down a job or otherwise change the course of any work. He was there to "observe and report" only. While there, he had the duty and the right to go about his job as an inspector and to use the facilities on the site to get from one level to another. He also had a right to expect those facilities to be in compliance with safety requirements of the OSHA regulations. *Osborne v. Salvation Army*, 107 F.2d 929, 931 (2d Cir. 1939), held that an employee is not barred from recovery despite his contributing negligence when his injury is attributed to a violation of a statute enacted for the benefit of a class of which he is a member. The Occupational Safety and Health Act is such a statute; it declares that to be its purpose.

This brings us to the issue of intoxication. To establish an affirmative defense, an employer must prove by a preponderance of the evidence that intoxication proximately caused Wyle's injury. *American Safety Razor Co. v. Hunter*, 2 Va. App. 258, 262, 343 S.E.2d 461, 464 (1986). Here, the commission found that

when Wyle fell, he was clearly under the influence of alcohol and in violation of a company rule which had been brought to his attention. However, the commission found that intoxication was not a proximate cause of Wyle's injury. It based its finding on the fact that Wyle did not fall until the ladder kicked out two to three feet and he lost his balance. The opinion states:

> While the defendant apparently attempts to establish that the intoxication caused the accident through the reports of Dr. Silverman and Dr. Lerner, the commission finds their opinions to be somewhat lacking through their total failure to address the role of the ladder kicking out, the apparent precipitating incident in the accident. While *intoxication may well have caused a problem with balance*, this was only after the ladder kicked out and as a result the ladder would properly be considered the proximate cause of the accident.

The commission further found that Wyle was successfully able to conduct business that morning. The only deficiency noted in his conduct was that he was not sharp about details but that this deficiency was not enough for another inspector to take any action concerning Wyle's conduct.

The commission found that Wyle's testimony on cross-examination unambiguously established that *he noticed* the ladder was not properly secured and consciously decided not to report this infraction to the foreman of Roofer's, Inc. The commission found that before the injury Wyle "disregard[ed] . . . the danger" and that he "lost his balance" after the ladder slipped. The opinion also states that intoxication may have caused a problem with balance. The deputy commissioner did not make a specific finding as to whether the disregard of danger and loss of balance was the result of intoxication and, if so, whether either contributed to cause the injury. The true inquiry is whether Wyle's injury would not have occurred but for his intoxication.

■ The commission focused upon the slipping of the ladder as being the only proximate cause of the injuries to Wyle. However, the question of proximate cause does not end with what caused the ladder to slip. An accident may have more than one proximate cause. *APV Crepaco, Inc. v. Alltransport, Inc.*, 683 F. Supp. 1031, 1032 (E.D. Va. 1987). Thus, the commission was required to consider whether Wyle's intoxication played *any* part in con-

tributing to his injury, i.e., by affecting his balance or causing him to disregard the danger.

Because the deputy commissioner's findings of fact, adopted by the commission, specifically concern whether the intoxication caused the ladder to slip and do not make similar findings with reference to whether intoxication in any other way proximately caused the injury, we remand the case for further findings of fact and conclusions of law regarding proximate cause.

*Reversed and remanded.*

Coleman, J., and Keenan, J., concurred.