46 F.3d 1124
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
John E. JENKINS, Plaintiff-Appellant,
v.
NORTH AMERICAN VAN LINES, INCORPORATED; Charles E. Gere,
Defendants-Appellees.
 No. 94-1363.
 United States Court of Appeals, Fourth Circuit.
 Argued: Sept. 26, 1994.
Decided: Jan. 30, 1995.
 
 ARGUED: Gail Starling Marshall, Rapidan, VA, for Appellant. Fred Calvin Alexander, Jr., MCGUIRE, WOODS, BATTLE & BOOTHE, Alexandria, VA, for Appellees. ON BRIEF: Leila H. Kilgore, KILGORE & SMITH, Fredericksburg, VA, for Appellant.
 Before RUSSELL and MURNAGHAN, Circuit Judges, and CHASANOW, United States District Judge for the District of Maryland, sitting by designation.
 OPINION
 PER CURIAM:
 
 
 1
 Plaintiff has appealed the district court's denial of his motions for judgment notwithstanding the verdict and, alternatively, for a new trial, after a jury rendered a verdict against him based on a theory of contributory negligence. We affirm.
 
 I.
 
 2
 Appellant John Jenkins was a street light mechanic for Dynatran, a company which worked under contract for the Virginia Department of Transportation. On July 30, 1991, Jenkins' company sent him with a groundman, James Caruthers, to repair a traffic signal on Backlick Road in Fairfax County, Virginia. Westbound traffic on Backlick Road was controlled by three traffic signals on a wire, one of which was hanging over each of the three westbound lanes. Jenkins was sent to replace the lower bulb of the middle traffic signal and was instructed to perform the repair without disrupting the flow of traffic. Caruthers was to work under the direction of Jenkins.
 
 
 3
 Jenkins' truck was parked north of the intersection, and orange plastic cones were placed around the truck to warn motorists of the work being done. Jenkins went up in the bucket of the aerial boom truck or "cherry picker" to replace the bulb. Although he was wearing a hard hat and orange vest, he had forgotten to put on his safety harness.
 
 
 4
 Charles Gere, a driver for North American Van Lines, operated a tractor-trailer truck and was travelling west on Backlick Road. Gere's son was travelling with him in the truck. Gere stated at trial that both the semi-trailer and the exhaust stack on his tractor were at the standard maximum height of thirteen feet, six inches, and that the height was stenciled on the side of the semi-trailer. Gere stopped at the Backlick Road traffic light behind eight to ten cars. When the light turned green, he proceeded through the intersection.
 
 
 5
 As Jenkins worked on replacing the bulb, Gere's truck drove through the intersection, and the bottom of the bucket in which Jenkins was working was struck first by the exhaust stack on the right rear of Gere's tractor, and then by the upper right corner of the front of the semi-trailer. Jenkins fell from the bucket onto the roof of the semi-trailer and was carried a short distance until he fell onto the highway.
 
 
 6
 Jenkins filed a suit for damages against Gere and North American Van Lines on July 23, 1993 in the Circuit Court for the County of Fairfax. Defendants filed a notice of removal to the United States District Court for the Eastern District of Virginia, and the case was tried to a jury on February 7-9, 1994 before Judge Cacheris. The jury found that (1) the defendants were negligent; (2) the plaintiff did not assume the risk; and (3) the plaintiff was contributorily negligent. After judgment was entered for the defendants on February 9, 1994, Jenkins filed motions for judgment notwithstanding the verdict, a new trial, and a partial new trial on damages. Jenkins' motions were denied on March 4, 1994, and he has appealed the rulings.
 
 II.
 
 7
 Jenkins moved for judgment notwithstanding the verdict after trial. A motion for judgment notwithstanding the verdict is equivalent to a motion for judgment as a matter of law under Federal Rule of Civil Procedure 50. See Fed.R.Civ.P. 50, Notes of Advisory Committee on 1991 Amendment. A proper pre-verdict motion, made at the close of all of the evidence in the case, is a necessary prerequisite to a posttrial motion for judgment as a matter of law. See id.; Miller v. Premier Corp., 608 F.2d 973, 979 n. 3 (4th Cir.1979); Aetna Casualty & Surety Co. v. Yeatts, 122 F.2d 350, 352 (4th Cir.1941). Jenkins failed to make a motion for judgment as a matter of law at the close of all of the evidence in the instant case.[1] Under Rule 50, he was thereby precluded from making a post-trial motion for judgment as a matter of law. In addition, "[i]t is established that the sufficiency of evidence to support a verdict is not reviewable on appeal unless a motion for a directed verdict is made in the trial court." Tights, Inc. v. AcmeMcCrary Corp., 541 F.2d 1047, 1058 (4th Cir.), cert. denied, 429 U.S. 980 (1976); see also 5A Moore's Federal Practice p 50.08 ("[A] party who fails to move for judgment as a matter of law under Rule 50(a) at the close of all the evidence cannot ask the court to rule on the legal sufficiency of the evidence supporting a verdict for the opponent, or raise the question on appeal."). Thus Jenkins' appeal of the denial of his motion for judgment as a matter of law has not been properly presented before us. However, we may consider his motion for a new trial. See Benson v. Allphin, 786 F.2d 268, 273 n. 7 (7th Cir.) ("A motion for directed verdict is not required as a predicate for a motion for a new trial."), cert. denied, 479 U.S. 848 (1986). The denial of a motion for a new trial is reviewed under an abuse of discretion standard. Wadsworth v. Clindon, 846 F.2d 265, 266 (4th Cir.1988).
 
 III.
 
 8
 Jenkins has challenged certain instructions given to the jury by the district court, as well as the judge's refusal to give several of Jenkins' motion, the motion was not made at the close of the evidence. The preverdict motion for judgment as a matter of law must be made at the close of all evidence in order for a post-verdict motion for judgment as a matter of law to be considered by the court. See Fed.R.Civ.P. 50, Notes of Advisory Committee on 1963 Amendment ("A motion for judgment notwithstanding the verdict will not lie unless it was preceded by a motion for a directed verdict made at the close of all the evidence." (emphasis added)). As the Advisory Committee stated in its discussion of the 1991 Amendment, "This provision retains the concept of the former rule that the post-verdict motion is a renewal of an earlier motion made at the close of the evidence.... A post-trial motion for judgment can be granted only on grounds advanced in the pre-verdict motion." Id., Notes of Advisory Committee on 1991 Amendment; see also 5A Moore's Federal Practice p 50.08; Farley Transportation Co., Inc. v. Santa Fe Trail Transportation Co., 786 F.2d 1342, 1345-46 (9th Cir.1985). proffered jury instructions. We review for abuse of discretion decisions regarding whether or not to give a jury instruction as well as the content of the instruction. United States v. Russell, 971 F.2d 1098, 1107 (4th Cir.1992), cert. denied, 113 S.Ct. 1013 (1993). A judgment will be reversed for error in jury instructions "only if the error is determined to have been prejudicial, based on a review of the record as a whole." Wellington v. Daniels, 717 F.2d 932, 938 (4th Cir.1983).
 
 A. Contributory Negligence
 1. OSHA Regulations
 
 9
 We apply Virginia law in this diversity action. In the Commonwealth of Virginia, contributory negligence is a complete bar to a negligence action. Jones v. Meat Packers Equipment Co., 723 F.2d 370, 373 (4th Cir.1983). At trial, the appellees introduced evidence showing Jenkins' violation of certain Occupational Safety and Health Administration (OSHA) regulations as an indication that Jenkins was contributorily negligent. These regulations state that "[a] body belt shall be worn and a lanyard attached to the boom or basket when working from an aerial lift." See 29 C.F.R. Sec. 1926.556(b)(2)(v). The district judge gave an instruction to the jury on the use of the evidence of failure to wear a safety harness in determining contributory negligence.[2] Jenkins, however, has claimed that a violation of OSHA regulations does not justify the contributory negligence instruction which the district court gave the jury.[3] The Virginia Supreme Court has stated that "the violation of any statute enacted to protect health, safety, and welfare, is negligence per se." MacCoy v. Colony House Builders, Inc., 239 Va. 64, 69, 387 S.E.2d 760, 763 (1990); Gough v. Shaner, 197 Va. 572, 576, 90 S.E.2d 171, 175 (1955). In order for the violation to be considered as negligence, the injured person must be in the class of persons whom the statute was enacted to protect. Williamson v. Old Brogue, Inc., 232 Va. 350, 355, 350 S.E.2d 621, 624 (1986); Pearson v. Canada Contracting Co., Inc., 232 Va. 177, 186, 349 S.E.2d 106, 112 (1986) (plaintiff who claimed injury as a result of defendant's OSHA violation could not recover on theory of negligence per se since the OSHA regulation was not enacted for his protection).
 
 
 10
 Jenkins was clearly an employee whom the OSHA regulations on safety in using aerial lifts was intended to benefit. His contention, however, is that if he is in the class of protected persons, the regulation cannot be used to establish his own negligence. The Virginia Court of Appeals has found that OSHA regulations are rules for employers to help make the workplace safer for employees, but that they are not "work rules for employees." Wyle v. Professional Services Industries, Inc., 12 Va.App. 684, 688, 406 S.E.2d 410, 412 (1991). In Wyle, the plaintiff was a roofing inspector who fell off of a ladder that was improperly tied in violation of an OSHA regulation. The duty to tie the ladder was on the roofing company, not on the plaintiff. At the time plaintiff fell, he was intoxicated. The court stated that OSHA rules are for the benefit of employees and that "[i]n order for an OSHA rule to bar the employee's claim, it would have to define some clear and unambiguous duty on the part of [the employee]." Id. The case was remanded on the issue of plaintiff's intoxication and proximate cause.
 
 
 11
 Wyle differs from the case at hand in that the OSHA regulations in the present case impose a clear duty on the employee to ensure his own safety. Wyle made a distinction between the case in which an employer has a duty to provide a safe workplace from the case in which there is a duty on the part of the worker. While in Wyle, it was the duty of the roofer to secure the ladder, Jenkins is the only one who could make sure that he himself was strapped into the bucket, and it was therefore incumbent upon Jenkins to observe the OSHA regulation.[4] Wyle would be analogous to the instant case if, for instance, the bucket controls broke because they were not properly inspected before use.[5] The OSHA regulations applicable in the instant case imposed a clear duty on Jenkins himself to strap himself in. So, under Wyle, Jenkins' failure to use the safety harness could operate to establish a presumption of his negligence.
 
 
 12
 In addition, in the instant case, Jenkins is the only one who violated the OSHA regulations; his employer had provided him with the necessary safety equipment, but Jenkins failed to use it. In Wyle, the employer violated regulations designed to force employers to keep their employees safe. Jenkins' employer, in contrast, had fulfilled its duties under the regulations, and the regulations would have benefitted Jenkins if followed by him.[6] The district judge did not abuse his discretion in instructing the jury on the effect of Jenkins' non-compliance with the OSHA regulation. He described a rebuttable presumption and stated the grounds on which it could be rebutted, leaving room for Jenkins to argue that he was not negligent if he acted reasonably under the circumstances.
 
 2. Proximate Cause
 
 13
 Jenkins has also argued that the appellees did not prove proximate causation between the failure to wear a safety harness and the accident, and that the jury therefore should have been instructed that failure to wear the belt could not be seen as contributory negligence. Even if a plaintiff is considered negligent for violating a statute, the violation still must be shown to be a proximate cause of the accident in order for it to bar the plaintiff's recovery. Thomas v. Settle, 247 Va. 15, 20, 439 S.E.2d 360, 363 (1994); Karim v. Grover, 235 Va. 550, 552, 369 S.E.2d 185, 186 (1988) ("When a defendant relies upon contributory negligence as a defense, he has the burden of proving by the greater weight of the evidence not only that the plaintiff was negligent," but also that his negligence proximately caused the accident.). Proximate cause is a jury issue when a plaintiff is found negligent for violating a statute. "Only if reasonable persons may not differ in their conclusions that such negligence was such a cause may a trial court properly decide the question as a matter of law." Thomas, 247 Va. at 20, 439 S.E.2d at 363; Duncan v. Hixon, 223 Va. 373, 376, 288 S.E.2d 494, 495 (1982).
 
 
 14
 In Garrett v. Desa Industries, Inc., 705 F.2d 721 (4th Cir.1983), we confronted a claim similar to the one made by Jenkins. In Garrett, the plaintiff, a carpenter, was driving nails into a cement wall. He was injured when he tried to remove the .22 caliber cartridge inside the stud driver and the cartridge exploded. The plaintiff was not wearing safety goggles at the time of the accident, although the stud driver was equipped with goggles. The district judge refused to give an instruction to the jury requested by the plaintiff which would have forbidden them to consider his failure to wear goggles in making their contributory negligence determination. We held that it was error to refuse the instruction. We reasoned that nonuse of the safety goggles did not cause the stud driver explosion, and the defendant had not shown that plaintiff's injury could have been avoided or mitigated had he been wearing goggles.
 
 
 15
 The Garrett court cited with approval Wilson v. Volkswagen of America, Inc., 445 F.Supp. 1368 (E.D.Va.1978), in which a man sued a car manufacturer after he was rendered a paraplegic in an automobile accident. He was not wearing his seat belt at the time of the accident, and the defendant sought to introduce evidence on the seat belt issue. The court noted that there is a split of authority in both state and federal courts on the admission of evidence on nonuse of a seat belt. Id. at 1372 n. 2 (listing cases both pro and con regarding whether the evidence should be admitted). The court stated, "A plaintiff's negligence ... is pertinent only if the plaintiff's failure to exercise due care causes, in whole or in part, the accident. In ordinary usage the term is not applicable to acts which merely exacerbate or enhance the severity of one's injuries." Id. at 1374.
 
 
 16
 The difference between Garrett and the instant case lies in the scope of what one considers to be the "accident" in each case. In Garrett, the accident consisted of the explosion of the stud gun. The plaintiff in that case, by wearing safety goggles, could perhaps have avoided some of his injury but could not have avoided the accident itself. In the case here under consideration, in contrast, the accident began at the moment that the truck hit the bucket in which Jenkins was working, and continued up until the time that Jenkins hit the ground. If Jenkins had been wearing the safety harness, he might not have fallen from the bucket and might have avoided the accident. Thus Jenkins' failure to wear the safety harness went not only to the extent of his injuries, but also to the accident itself.[7] Jenkins has contended on appeal that the only evidence presented at trial on the issue of whether his injuries would have been less had he been wearing the harness came from a witness for the plaintiff (the plaintiff's supervisor) who stated, when he saw the condition of the cherry picker after the accident, that the plaintiff would have sustained greater injuries had he been strapped in. However, the jury could have concluded that had Jenkins worn the harness, he would not have fallen from the bucket and may have been able to avoid the consequences of the accident entirely. Since the jury could thus have concluded that Jenkins' failure to wear his harness proximately caused the accident, the district judge did not err in submitting the issue of contributory negligence regarding the safety harness to the jury, and allowing them to decide proximate causation.
 
 3. The Virginia Code
 
 17
 Jenkins argues in addition that all references to failure to wear the safety harness as negligence should have been excluded from the trial, citing in support of his theory the Virginia Motor Vehicle Code. The district court found, however, that the Code provision to which Jenkins referred in challenging the jury instruction did not apply to the case at hand. The Virginia Code states:
 
 
 18
 Sec. 46.2-100. Definitions.--The following words and phrases when used in this title shall, for the purpose of this title, have the meanings respectively ascribed to them in this section except in those instances where the context clearly indicates a different meaning: ... "Motor Vehicle " means every vehicle as defined in this section which is self-propelled or designed for self-propulsion except as otherwise provided in this title. Any structure designed, used, or maintained primarily to be loaded on or affixed to a motor vehicle to provide a mobile dwelling, sleeping place, office, or commercial space shall be considered a part of a motor vehicle. ...
 
 
 19
 ....
 
 
 20
 Sec. 46.2-1092. Safety lap belts or a combination of lap belts and shoulder harnesses to be installed in certain motor vehicles.--No passenger car ... shall be operated on the highways in the Commonwealth unless the front seats thereof are equipped with adult safety lap belts or a combination of lap belts and shoulder harnesses of types approved by the Superintendent. Failure to use the safety lap belts or a combination of lap belts and shoulder harnesses after installation shall not be deemed to be negligence. Nor shall evidence of such nonuse of such devices be considered in mitigation of damages of whatever nature.
 
 
 21
 Va.Code Secs. 46.2-100, 46.2-1092 (emphasis added). Jenkins has argued that the bucket attached to the truck in this case constituted "part of a motor vehicle" under Sec. 46.2-100, and that therefore the provision in Sec. 46.2-1092 stating that failure to wear a belt shall not be considered as negligence or in mitigation of damages applies to his case. However, Jenkins' argument fails. The bucket in which he was working was not a mobile dwelling, sleeping place, office, or commercial space. Therefore, the description of "part of a motor vehicle" under Sec. 46.2-100 of the Virginia Code does not apply to the bucket, and the district court judge was correct in refusing to exclude all references to Jenkins' failure to wear a safety harness as evidence of contributory negligence.
 
 4. Imputed Negligence of a Co-Worker
 
 22
 Jenkins requested a jury instruction stating that he should not be charged with the imputed negligence of his co-worker, Caruthers. However, we need not address the district court's denial of the requested instruction, since there was substantial evidence justifying a jury finding of Jenkins' contributory negligence. The district judge's failure to give the instruction on imputed negligence, even if error, was not prejudicial to Jenkins. See Wellington, 717 F.2d at 938.
 
 B. Last Clear Chance
 
 23
 Jenkins has sought to avoid the consequences of the contributory negligence finding by challenging the district court's decision to refuse to give the jury an instruction on the doctrine of last clear chance.[8] The Supreme Court of Virginia has explained the doctrine as follows:
 
 
 24
 Where the injured person has negligently placed himself in a situation of peril from which he is physically unable to remove himself, the defendant is liable if he saw, or should have seen, him in time to avert the accident by using reasonable care. Where the plaintiff has negligently placed himself in a situation of peril from which he is physically able to remove himself, but is unconscious of his peril, the defendant is liable only if he saw the plaintiff and realized, or ought to have realized, his peril in time to avert the accident by using reasonable care.
 
 
 25
 Greear v. Noland Co., Inc., 197 Va. 233, 238-39, 89 S.E.2d 49, 53 (1955). The first scenario describes the "helpless" plaintiff and the second, the "inattentive" plaintiff. A plaintiff is considered helpless for purposes of last clear chance only when he or she is physically incapacitated. Vanlandingham v. Vanlandingham, 212 Va. 856, 858, 188 S.E.2d 96, 98 (1972). Jenkins was clearly not helpless under that definition, since he had a control mechanism in the bucket and was physically able to raise the bucket and remove himself from his perilous situation. Jenkins was, however, an inattentive plaintiff. Under the inattentive plaintiff theory, last clear chance applies only if Gere actually saw Jenkins and realized or should have realized that he was in danger in time to avoid the accident using reasonable care. See Simmers v. Depoy, 212 Va. 447, 451, 184 S.E.2d 776, 780 (1971).
 
 
 26
 There was little evidence presented that bore on whether or not defendant Gere actually saw Jenkins before the accident occurred. Gere stated at trial that he did not see the bucket in which Jenkins was working before he hit it. Two witnesses contradicted Gere's testimony: (1) Jenkins' wife testified that while she was in her husband's hospital room, she received a phone call from Gere during which he stated that he saw the plaintiff and tried to avoid hitting him; and (2) an officer who took an oral statement from Gere after the accident testified that Gere said that he changed lanes to go around the "bucket."
 
 The Virginia Supreme Court has stated:
 
 27
 The doctrine of last clear chance is one involving nice distinctions, often of a technical nature, and courts should be wary in extending its application.... ....
 
 
 28
 The burden is upon [the plaintiff] to show affirmatively by a preponderance of the evidence that by the use of ordinary care after the peril was discovered the defendant in fact had a last clear chance to avoid the injury. A mere possibility is not sufficient.
 
 
 29
 Hutcheson v. Misenheimer, 169 Va. 511, 516-17, 194 S.E. 665, 667 (1938); see also Pack v. Doe, 236 Va. 323, 328, 374 S.E.2d 22, 24-25 (1988). The only evidence presented that defendant Gere actually saw the plaintiff in the bucket was two statements by people who had spoken with the defendant after the accident. As to the statement by the police officer, Gere testified that he remembered answering questions of a police officer, but that he would not have told him that he saw the "bucket." Gere stated that when he spoke to the officer, he might have said that he saw the "cherry picker," but that in using this term, he was referring to the truck, not to the actual bucket in which Jenkins was working. The only other evidence implicating that Gere may have seen Jenkins was a statement by the plaintiff's wife.
 
 
 30
 Jenkins discusses at length in his brief the way in which the jury, from the testimony given, could have drawn the inference that Gere saw Jenkins in time to avoid him. But even assuming that Gere saw the bucket with Jenkins in it, "liability is further predicated upon the proposition that the defendant realized or ought to have realized the peril of the plaintiff in time to avert the accident by use of reasonable care." Simmers, 212 Va. at 451, 184 S.E.2d at 780. Jenkins produced only a scant bit of evidence tending to show that Gere actually realized Jenkins' peril before the accident.[9] However, he produced no evidence showing that if Gere realized Jenkins' peril, he would have had time to avoid hitting the bucket by the use of reasonable care. In addition, Jenkins did not produce evidence to show that Gere ought to have realized the peril in time to avert the accident by using reasonable care. Gere's testimony that his tractor-trailer was thirteen feet, six inches high was uncontradicted by Jenkins at trial; Jenkins never measured the height of the tractor-trailer. Jenkins produced no evidence tending to show that Gere should have known, in time to avoid the accident, that his tractor-trailer would strike the bucket. It was within the district judge's discretion to find that Jenkins did not produce enough evidence to warrant sending the issue of last clear chance to the jury, and to refuse to give the instruction.
 
 IV.
 
 31
 The district judge was within his discretion in denying Jenkins' motion for a new trial. Accordingly, the judgment of the district court is
 
 
 32
 AFFIRMED.
 
 
 
 [1]
 Plaintiff contends that he made a motion for judgment as a matter of law. While it is true that he made what could be construed as such a
 
 
 [2]
 The Judge told the jury:
 If you find from a preponderance of the evidence that the plaintiff, by some act or failure to act, violated the provisions of the regulations requiring the wearing of a belt, such conduct in violation of law is presumed negligent. This presumption of negligence is not, however, conclusive, but may be overcome or outweighed by evidence in the case which satisfies your minds that, notwithstanding any failure to comply with the provisions of law in question, the plaintiff acted as a reasonably prudent person would have acted under the surrounding circumstances as shown by the evidence in the case.
 
 
 [3]
 Although Jenkins has contended that the district judge instructed the jury on the use of his violation as establishing negligence per se, the judge actually told the jury that the violation created merely a presumption of negligence and explained how the presumption could be overcome, an instruction which was manifestly more favorable to Jenkins than the per se instruction which he has suggested was given
 
 
 [4]
 Jenkins admitted on cross examination that he knew that he was supposed to use the safety harness when he worked in the bucket, and stated that he had been told that wearing the harness was required by an OSHA rule
 
 
 [5]
 The OSHA regulation requires that "[l]ift controls shall be tested each day prior to use to determine that such controls are in safe working condition." 29 C.F.R. Sec. 1926.556(b)(2)(i). Such a regulation would apply to Jenkins' employer, as opposed to the regulation in the instant case, which dictated that Jenkins himself take certain safety precautions
 
 
 [6]
 It is significant that allowing Jenkins' OSHA violation to be introduced for purposes of establishing contributory negligence does not defeat OSHA's goal of protecting employees in the workplace. Although it has been noted that allowing an employer to assert the defense of contributory negligence in a case brought by an employee and predicated on the employer's violation of a workplace regulation would defeat the purpose of the regulations, see, e.g., Prosser & Keeton on Torts Sec. 65 (5th ed.1984); Osborne v. Salvation Army, 107 F.2d 929, 932 (2d Cir.1939), the suit in the instant case involves a non-employer defendant who is not alleged to have violated OSHA. Thus, allowing the defense of contributory negligence in such a case would in no way relieve an employer of its duty to comply with OSHA standards
 
 
 [7]
 Compare also the case of Wyle, 12 Va.App. 684, 406 S.E.2d 410, in which the appellate court remanded the issue of whether the plaintiff's intoxication was a proximate cause of his injury when he fell off an improperly tied ladder. The court stated, "The commission focused upon the slipping of the ladder as being the only proximate cause of the injuries to Wyle. However, the question of proximate cause does not end with what caused the ladder to slip. An accident may have more than one proximate cause." Id. at 689, 406 S.E.2d at 413
 
 
 [8]
 The appellees have asserted that Jenkins cannot argue last clear chance since he has denied any negligence. Federal Rule of Civil Procedure 8(e) states: "A party may set forth two or more statements of a claim or defense alternately or hypothetically.... A party may also state as many separate claims or defenses as the party has regardless of consistency...." Jenkins has properly contended that, although he denies any negligence, he may plead last clear chance in the alternative
 
 
 [9]
 Jenkins' wife and the police officer at the scene of the accident both testified that Gere admitted trying to avoid Jenkins, from which it could be inferred that Gere realized that he might hit Jenkins