**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

KATIE H. MCCOTTER,
Plaintiff-Appellant,

v.

No. 95-2440

SMITHFIELD PACKING COMPANY,
INCORPORATED, a corporation,
Defendant-Appellee.

Appeal from the United States District Court
for the Eastern District of Virginia, at Norfolk.
Henry C. Morgan, Jr., District Judge.
(CA-93-953)

Argued: June 3, 1996

Decided: July 24, 1996

Before WILKINSON, Chief Judge, and NIEMEYER and
HAMILTON, Circuit Judges.

_____

Vacated and remanded by unpublished per curiam opinion. Judge
Niemeyer wrote a dissenting opinion.

_____

**COUNSEL**

**ARGUED:** Joseph Anthony Gawrys, VANDEVENTER, BLACK,
MEREDITH & MARTIN, L.L.P., Norfolk, Virginia, for Appellant.
William W. Nexsen, STACKHOUSE, SMITH & NEXSEN, Norfolk,
Virginia, for Appellee.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

Plaintiff-Appellant Katie McCotter (McCotter), a United States Department of Agriculture (USDA) meat inspector for six years, was seriously injured when a hog carcass fell from an overhead conveyor system and struck her while she was performing her official duties at the Defendant-Appellee Smithfield Packing Co., Inc.'s (Smithfield) meat packing plant in Smithfield, Virginia. As a result of her injuries, McCotter filed a negligence action against Smithfield. The jury returned a verdict in favor of Smithfield. On appeal, McCotter seeks vacation of the adverse verdict and a new trial on the ground that the district court erroneously put the issue of contributory negligence before the jury. Because the issue of contributory negligence should not have been put before the jury, we vacate the jury's verdict and remand for a new trial.

I.

Federal law requires that federal food inspectors perform antemortem and postmortem inspections on all hogs brought into a meat processing facility to check for signs of disease. See 21 U.S.C. §§ 603 and 604. Thirteen federal inspectors were assigned to the packing plant involved here. Seven of these inspectors, including McCotter, were assigned to the "kill floor," where hogs were killed, bled, and inspected for diseases.

On September 24, 1991, McCotter and two co-inspectors, Regina Peterson and Rufus Miller, were working as "head" inspectors at the "head" inspection station on the kill floor, where they examined the heads of hog carcasses (still attached to the hog carcasses by a piece of skin) for signs of disease or other contamination. The hog carcasses, weighing approximately 250 pounds each, were suspended from an overhead conveyor system by a metal bar with a hook at each

2

end called a gambrel. One hook went through a hole in one hind foot of the hog carcass while the other hook went through a similar hole in the other hind foot. The hole in each foot was created by a Smithfield employee slicing part of the skin in the hind foot with a knife in order to free the foot's tendon. If the employee was not careful, he or she could nick the tendon while slicing the hole, thus weakening the tendon. A weakened tendon created a fairly substantial risk that the hog carcass would fall from the conveyor system at some point during its processing.

Each head inspector was required to inspect the head of every third hog carcass while they traveled by the inspectors from left to right at the rate of 1,106 hog carcasses per hour. Two of Smithfield's employees, Benny Watford and Michael Coleman, worked on the opposite side of the line of hog carcasses from McCotter, Regina Peterson, and Rufus Miller. Both were known as "head trimmers."

According to the USDA training manual used to train meat inspectors, "[a]fter inspecting contaminated parts, the inspectors must thoroughly clean and sanitize their hands and their equipment before examining the next part." (J.A. 189). Smithfield provided two sinks operated by foot pedals at the head inspection station for this purpose. Each sink had sterilizers attached to each side with hot water so that the inspectors could sterilize their tools.

Given the position of the two sinks at the head inspection station, a head inspector, such as McCotter, had, at most, ten inches in which to stand in front of the sink while cleaning and sanitizing her hands. The two sinks were attached to a wall behind the inspectors that was only forty inches from the conveyor system. Each sink projected out twenty inches from the wall and the suspended hog carcasses projected out ten to fifteen inches toward the sinks.

On September 24, 1991, while McCotter was performing her duties as a head inspector, her hands became contaminated with hog blood. Consequently, she turned and stepped to one of the sinks behind her in order to clean and sanitize her hands. The record reveals slightly different versions of what happened at this point. McCotter testified that while she was washing her hands at one of the sinks, a hog carcass suddenly fell from the conveyor system, struck her left shoulder,

3

and pushed her into the sink. Co-inspector Regina Peterson and head trimmer Benny Watford both testified that the hog carcass suddenly struck McCotter and pushed her into the sink after she had completed washing her hands and had started to turn around toward Regina Peterson, who was standing just to McCotter's left while McCotter was facing the sink. By turning toward Regina Peterson, McCotter was turning away from the approaching hog carcasses on the conveyor system. The record also contains the testimony of Benny Watford and Michael Coleman that the head of the hog carcass hit the floor before its body struck McCotter. The record is undisputed that the hog carcass also struck the hand of Regina Peterson who was facing the conveyor system.

The falling hog carcass caused injuries to McCotter's head, neck, back, arms, and left shoulder. The injuries to her left shoulder necessitated several surgeries and continue to prevent McCotter from performing her occupation as a USDA meat inspector. Her medical expenses at the time of trial totalled $37,425.38.

McCotter sued Smithfield on a negligence theory. Specifically, McCotter alleged that Smithfield breached its duty to keep its premises safe, that the kill room had an unreasonably dangerous design about which Smithfield ought to have known, that Smithfield failed to train or supervise adequately its employees in the handling of hog carcasses and their movement while on the conveyor system, and that Smithfield failed to protect the area around the conveyor system to prevent injuries from falling hog carcasses.

A jury trial began on November 15, 1994. After Smithfield rested, McCotter requested that the district court not instruct the jury on contributory negligence or assumption of the risk. The district court agreed that an assumption of the risk instruction was inappropriate, but disagreed with respect to an instruction on contributory negligence. At this point, McCotter objected to any instructions referring to contributory negligence on the ground that no evidence had been presented during the trial to support such an instruction. The district court overruled the objection and submitted the case to the jury on the issues of negligence, contributory negligence, and damages.

On November 22, 1994, the jury returned a general verdict in favor of Smithfield. At this time, McCotter made an oral motion to set aside

4

the verdict and grant a new trial. The district court denied the motion. The district court then entered judgment on the jury verdict on November 23, 1994. Subsequently, on December 2, 1994, McCotter moved to vacate the judgment and grant a new trial. In the motion, McCotter argued the evidence did not support an instruction on contributory negligence. The district court denied the motion, and McCotter noted a timely appeal from the judgment.

II.

McCotter attacks the judgment below on the basis that the district court erroneously submitted the issue of contributory negligence to the jury. The parties agree that Virginia law controls the substantive legal issues in this action.

Under Virginia law, contributory negligence exists when "a plaintiff fail[s] to act as a reasonable person would have acted for his own safety under the circumstances." Artrip v. E.E. Berry Equip. Co., 397 S.E.2d 821, 824 (Va. 1990). If the plaintiff was contributorily negligent, then Virginia law bars a plaintiff from recovering in a negligence action if the plaintiff's contributory negligence proximately caused his injury. See Litchford v. Hancock, 352 S.E.2d 335, 337 (Va. 1988). Federal district courts operate under a federal standard when determining the sufficiency of the evidence for submission of the issue of contributory negligence to a jury. See Jones v. Meat Packers Equip. Co., 723 F.2d 370, 372 (4th Cir. 1983). Under that standard, in the absence of evidence, or all reasonable inferences that can be drawn from the evidence, disclosing that a plaintiff was negligent and contributed to her injuries, the issue of contributory negligence should not go to the jury. Id.

On appeal, McCotter contends that the record is devoid of any evidence showing that she failed to act as a reasonable person would have acted under the circumstances. She further contends that no reasonable inferences could be drawn from the evidence at trial to show that she failed to act as a reasonable person would have acted under the circumstances. Finally, she contends that the record is devoid of any evidence that her actions leading up to the accident or at the time of the accident contributed to her injuries.

5

Conversely, Smithfield contends that the record contains evidence to support the contributory negligence instruction, and thus, the district court did not err by giving the instruction. In support of its position, Smithfield argues that a reasonable juror could have found that McCotter, by looking at her hands while washing them in the sink instead of turning her head toward the oncoming hog carcasses, failed to act as a reasonable person would have acted for her own safety under the circumstances. Similarly, Smithfield argues that McCotter should have been looking toward the oncoming hog carcasses while starting to return to her post. According to Smithfield, keeping a lookout for falling hog carcasses would have allowed McCotter to protect herself by either escaping the falling hog carcass or somehow fending it off. This was the primary basis upon which the district court gave the contributory negligence instruction.

McCotter first responds to Smithfield's arguments by arguing that she had to face the sink while washing her hands in order to be certain that she had thoroughly cleaned and sanitized them as required by the USDA's training manual for meat inspectors. She further argues that given the space constraints of the inspection area, the hog carcass would have struck her regardless of whether she had been facing the oncoming hog carcasses while washing her hands or looking down in the sink to ensure a thorough job. She makes the same argument with respect to turning away from the oncoming hog carcasses after she had finished washing her hands. In support, McCotter points to the fact that the hog's foot hit the hand of Regina Peterson, who was standing just to McCotter's left as McCotter faced the sink, in spite of the fact that Regina Peterson was facing the oncoming hog carcasses.

After reviewing the record, we are convinced that no evidence exists to support the district court's contributory negligence instruction. First, no reasonable juror could conclude that McCotter acted negligently by turning her back to the conveyor system in order to thoroughly clean and sanitize her hands as required by the training manual for USDA meat inspectors. According to that manual, "[t]horough cleaning and sanitizing takes time . . . ." (J.A. 189). Common sense dictates that McCotter could not keep a lookout for falling hog carcasses while at the same time paying needed attention to the task at hand--thoroughly cleaning and sanitizing her hands. Further-

6

more, Smithfield, not McCotter, created McCotter's need to turn her back on the conveyor system by placing the sinks on the wall opposite the conveyor system.

Second, a reasonable juror could not find that McCotter acted negligently or contributed to her injuries by not turning toward the oncoming hog carcasses after she had finished thoroughly cleaning and sanitizing her hands so that she could keep a lookout for falling hog carcasses. There was no evidence that had McCotter turned toward the oncoming hog carcasses after washing her hands, she would have been able to avoid being hit by the 250 pound falling hog carcass. The only evidence in the record relative to this issue suggests otherwise--given that McCotter had only inches in which to maneuver in front of the sink, she had no conceivable means of escaping the falling hog carcass and the hog carcass struck Regina Peterson while Regina Peterson, standing just to McCotter's left while McCotter faced the sink, faced the oncoming hog carcasses.

III.

In conclusion, we hold the district court erred by instructing the jury on contributory negligence. We also hold the error was not harmless. Because contributory negligence is a complete bar to an action based on negligence in Virginia, "it is impossible to ascertain from the jury's general verdict what effect the issue of contributory negligence had on their decision." See Jones, 723 F.2d at 373.* Accordingly, we vacate the district court's judgment in favor of Smithfield and remand the case to the district court for a new trial.

VACATED AND REMANDED FOR A NEW TRIAL

NIEMEYER, Circuit Judge, dissenting:

When a party adopts, as a litigation strategy, the position that the plaintiff was contributorily negligent and, in furtherance of that strat-

_____

*McCotter also contends on appeal that the district court abused its discretion by not permitting her to mention the amount of her complaint's ad damnum clause or a lessor amount during closing argument. We have reviewed this contention and find it to be without merit.

7

egy, offers evidence that the plaintiff failed to act reasonably in protecting herself in view of known hazards, it is incumbent on the trial court to instruct the jury on the law of contributory negligence even if the court would not itself find the plaintiff contributorily negligent.

In this case, Smithfield Packing Company contended that McCotter was contributorily negligent in failing, when washing her hands, to keep a lookout for falling hog carcasses. It established that workers around the conveyor system know that hog carcasses fall off their hooks for a number of reasons inherent in a meat-packing business and proffered evidence that if McCotter had kept a better lookout, turning toward the oncoming carcasses when she finished washing her hands, she could have avoided injury.

The majority opinion, instead of leaving the contributory negligence issue with the jury, improperly conducted the very fact-finding analysis that is committed to the jury.

I would affirm.

8