**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

GARY CROWELL,
Plaintiff-Appellant,

v.

No. 99-2027

ANGELUS SANITARY CAN MACHINE
COMPANY,
Defendant-Appellee.

Appeal from the United States District Court
for the Eastern District of Virginia, at Norfolk.
Robert G. Doumar, Senior District Judge.
(CA-99-19-2)

Argued: June 9, 2000

Decided: July 19, 2000

Before MICHAEL and TRAXLER, Circuit Judges,
and BUTZNER, Senior Circuit Judge.

_____

Reversed and remanded by unpublished per curiam opinion.

_____

**COUNSEL**

**ARGUED:** William Revell Lewis, III, CURTIS, LEWIS & DIX,
L.L.P., Accomac, Virginia, for Appellant. Archibald Wallace, III,
SANDS, ANDERSON, MARKS & MILLER, Richmond, Virginia,
for Appellee. **ON BRIEF:** M. Ann Neil Cosby, SANDS, ANDER-
SON, MARKS & MILLER, Richmond, Virginia, for Appellee.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

Appellant Gary Crowell appeals from a jury verdict in favor of Angelus Sanitary Can Machine Company ("Angelus") on Crowell's products liability claim. We reverse and remand for a new trial.

I.

Crowell worked as a maintenance mechanic for Eastern Shore Seafood Products Company ("Eastern Shore"), a processor of sea clams and clam juice. In its juice-canning process, Eastern Shore uses a "filler" machine and a can seaming machine (the "seamer"). The filler receives empty cans and fills them with clam juice. A conveyor then moves the cans to the adjacent seamer, which puts lids on the cans and seals them. The seamer's "starwheel," a spoked wheel with six equally-spaced fingers, rotates and feeds the cans into the seamer. The seamer used by Eastern Shore was designed and manufactured by Angelus, the defendant in this action.

Crowell reported to work early one morning, approximately an hour before the juice-canning line started operating for the day, to modify the filler machine. He locked out the filler to prevent it from being activated while he was making the modifications and ascertained that the power switches for the seamer were off and that the seamer was not running.

Crowell completed the modifications to the filler approximately thirty minutes before the normal start-up time for the juice line. He left the juice line to put away some of his tools and returned with a hose to wash any metal shavings out of the filler. As Crowell was standing near the seamer hosing out the filler, an unidentified third party activated the seamer.* Crowell, who was wearing earplugs as

_____

*The parties stipulated at trial that the seamer was activated by an "unknown third party." J.A. 45

2

required by his employer, did not hear the seamer being activated. The rotating starwheel grabbed the handle of a wrench in the pocket of Crowell's coveralls, and he was pulled in towards the seamer. The fingers of the starwheel cut into Crowell's right leg, severing muscles and nerves. Crowell was hospitalized for nine days and out of work for almost one year.

Crowell sued Angelus in Virginia state court, contending that the seamer was defective because it did not have a guard around the star-wheel. Angelus removed the action to federal district court on the basis of diversity of citizenship. At trial, the district court sua sponte instructed the jury on contributory negligence, and the jury returned a general verdict in favor of Angelus.

II.

On appeal, Crowell contends that the district court erred by instructing the jury on contributory negligence because there was no evidence to support such an instruction. We agree.

In diversity cases, federal courts apply a federal standard when determining whether the evidence was sufficient to submit a particular claim or defense to the jury. See Jones v. Meatpackers Equip. Co., 723 F.2d 370, 372 (4th Cir. 1983). "In the absence of evidence, or reasonable inferences that can be drawn from the evidence, disclosing that [the plaintiff] was negligent, the issue of contributory negligence should not . . . be[ ] submitted to the jury." Id.

The only evidence about the accident and how it happened came from the testimony of Crowell. Crowell testified that he knew it was dangerous to work around equipment that was in operation. Accordingly, before he started working on the filler, Crowell locked it down so it could not be activated, and he made certain that the power switches for the seamer were in the off position and that the seamer was not operating. He also testified that, after he had completed the modification on the filler and he walked back to the juice line with the hose to wash out the filler, he saw that the seamer was not operating. We fail to see how this evidence can support any inference of negligence on the part of Crowell.

3

Angelus, however, contends that there are several ways that the jury could reasonably have found Crowell to have been negligent. According to Angelus, the jury could have found Crowell to be negligent by (1) working close to the seamer when it was running; (2) wearing earplugs that masked his ability to hear the seamer being turned on; or (3) working on the equipment near the time the juice line was scheduled to begin operating. We disagree.

First, there is no evidence in the record that Crowell could have modified the filler, as he was required to do by his employer, without being close to the seamer. Nor is there any evidence from which such an inference could reasonably be drawn. Thus, there is simply no evidence to support Angelus's speculation about the possibility of other ways for Crowell to perform his job. Cf. Leech v. Beasley, 128 S.E.2d 293, 299 (Va. 1962) (concluding that trial court properly refused to give jury instructions that "were not supported by the evidence, and would have permitted the jury to engage in speculation and conjecture").

Second, Crowell testified that he was required by Eastern Shore to wear earplugs to protect against the noise in the plant. Although the juice line was not running when Crowell was injured, Crowell testified that other departments were running and that the noise level at the plant was very high. Crowell therefore cannot be considered negligent for wearing earplugs in accordance with the requirements of his employer. Cf. Jones, 723 F.2d at 372 ("[A]n employee who is injured while performing a job in accordance with instructions provided by the employer is not guilty of contributory negligence unless the danger is so apparent that no reasonable person would encounter it." (citing Norfolk & Western R.R. v. Ward, 19 S.E. 849, 850 (1894)). Moreover, there is no evidence that the seamer was running for any appreciable length of time before Crowell was pulled into it. Thus, there is no evidence from which it could reasonably be inferred that the injury could have been avoided if Crowell had heard the seamer when it was first started. See Virginia Elec. & Power Co. v. Dungee, 520 S.E.2d 164, 171 (Va. 1999) ("[T]he evidence must also show that the negligent conduct by the plaintiff was a proximate cause of his injury.")

Finally, Crowell testified that he began working on the filler at approximately 7:00 a.m. and began hosing it out at approximately

4

7:30 a.m., thirty minutes before the scheduled start-up time for the juice line. There is no evidence in the record establishing that Crowell could have or should have come to work any earlier to perform the modification. Crowell also testified that anyone starting the seamer would have to walk past him to access the controls, and that the person starting the machine generally tells anyone in the area that the machine is being activated. Thus, the evidence presented at trial simply does not support an inference that Crowell was negligent by performing the repairs when he did or that he ignored the danger that the juice line would be activated during the repairs.

We therefore conclude that the district court erred by instructing the jury on contributory negligence. And because contributory negligence is a complete bar to recovery in Virginia, we cannot determine from the general verdict whether the jury's decision was based on a finding that Angelus was not negligent or a finding that Crowell was contributorily negligent. Thus, the error in giving the instruction cannot be considered harmless. See Sunkist Growers, Inc. v. Winckler & Smith Citrus Prods. Co., 370 U.S. 19, 29-30 (1962) (holding that when a general verdict may rest on an erroneous ground, and there is no way to discern otherwise, the verdict must be set aside). Accordingly, we reverse the jury's verdict and remand for a new trial. Given our disposition of this issue, we need not consider the other issues raised by Crowell.

REVERSED AND REMANDED