JAMES D. MORRIS, ET AL.

V.

JAMES W. MORRIS

Record No. 870592

DOOR SYSTEMS, INC., AND ERIE INSURANCE EXCHANGE

V.

CLYDE M. HOOD

Record No. 881394

PITTSBURGH PLATE GLASS

V.

ROBERT J. TOTTEN

Record No. 881426

November 10, 1989

Present: Carrico, C.J., Compton, Stephenson, Russell, Thomas,* Whiting, and Lacy, JJ.

* Justice Thomas participated in the hearing and decision of this case prior to the effective date of his resignation, November 1, 1989.

*Susan A. Evans (Siciliano, Ellis, Dyer & Boccarosse*, on brief), for appellants. (Record No. 870592)

*Lawrence J. Pascal; Susan E. Cummins; Kathleen G. Walsh (Ashcraft & Gerel*, on brief), for appellee. (Record No. 870592)

*Benjamin J. Trichilo (Lewis, Tydings, Bryan & Trichilo*, on briefs), for appellant. (Record Nos. 881394 and 881426)

*Lawrence J. Pascal; Susan E. Cummins; Kathleen G. Walsh (Ashcraft & Gerel*, on brief), for appellee. (Record Nos. 881394 and 881426)

Justice Russell delivered the opinion of the Court.

We consolidated for argument three workers' compensation appeals from the Court of Appeals of Virginia. Ordinarily, in cases originating before the Industrial Commission, a decision of the Court of Appeals is final, Code § 17-116.07(A)(2), but we granted appeals in these cases because they involve "matters of significant precedential value." Code § 17-116.07(B). The facts in the three cases differ substantially and will be separately de-

scribed below. The cases, however, involve a common question of law: whether an injury resulting from repetitive trauma, continuing mental or physical stress, or other cumulative events, amounts to an "injury by accident" within the meaning of Code § 65.1-7, a prerequisite for compensability under the Workers' Compensation Act. Because all three cases turn upon that question, we decide them in a single opinion. The facts will be stated in conformity with the findings of the Industrial Commission.

## MORRIS v. MORRIS, Record No. 870592

On December 3, 1984, James W. Morris, the claimant, was employed by his son, James D. Morris, trading as Fiberglass Engineering Company. The claimant drove a truck from his place of employment in Northern Virginia to Richmond to pick up fiberglass materials. When he arrived at the warehouse in Richmond, he found it necessary to lift 96 cartons of fiberglass, each weighing approximately 50 pounds, from a loading dock and lower them into the bed of his truck, which was positioned eighteen inches lower than the dock. Ordinarily, he would have used a forklift, but the dock was not so equipped. He felt no discomfort while loading the truck. The loading process took him approximately 45 minutes.

After loading, Mr. Morris got into the truck and drove away from the dock. After a very few minutes, he felt warmth, dizziness, and nausea. He stopped the truck, rested for 30 minutes, felt no better, and returned to the warehouse to ask for help. He was taken by ambulance to the Medical College of Virginia about 10 minutes later. There, a physician diagnosed his condition as an acute myocardial infarction. He was found to have a total occlusion of a coronary artery. He had evidently suffered from heart disease for some time. An electrocardiogram performed at the hospital showed an "[o]ld inferior anteroseptal myocardial infarction of indeterminate age." He remained in the hospital for three weeks and returned to work two months after his heart attack.

Mr. Morris applied for compensation benefits. The case was heard by a deputy commissioner, who denied the application, holding that the claimant had failed to prove an "injury by accident" consisting of an identifiable incident that occurred at a reasonably definite time, as required by our then-recent decision in *Kraft Dairy Group v. Bernardini*, 229 Va. 253, 255-56, 329 S.E.2d 46, 47 (1985). On appeal, the full commission affirmed.

Mr. Morris appealed to the Court of Appeals which, citing its earlier decision in *Bradley* v. *Philip Morris*, 1 Va. App. 141, 336 S.E.2d 515 (1985), reversed the Industrial Commission and remanded the case for an award of compensation. *Morris* v. *Morris*, 4 Va. App. 193, 355 S.E.2d 892 (1987).

DOOR SYSTEMS, INC. v. HOOD, Record No. 881394

Clyde M. Hood, the claimant, worked for Door Systems, Inc. in September 1986. His work involved the installation and repair of large steel garage doors. On the morning of September 15, the claimant was assigned to deliver garage doors to a shopping mall under construction in Arlington. The claimant and a co-worker unloaded seven steel doors from a truck over a period of approximately an hour and a half. About noon, the claimant felt soreness in his lower back. He later testified: "I figured I pulled a muscle which, you know, was nothing unusual." He continued to work the remainder of the day, but he noted that the pain grew more intense as the day progressed. The co-worker testified that the claimant worked at a "pretty regular pace all day" and never mentioned any injury. The claimant worked a full shift the following day, but was unable to perform his normal duties and went to the hospital.

The claimant returned to work thereafter, but could perform only light duties. On October 3, he underwent a myelogram at Potomac Hospital, which revealed a ruptured cervical disc. On October 8, a surgeon performed a discectomy and fusion.

In a recorded statement received in evidence, the claimant stated that he could not recall any specific incident which caused his injury. He said the only reason for his belief that he had been injured on September 15 was because he had developed soreness on that day.

The deputy commissioner who heard the evidence found that "the claimant was not injured as the result of a specific rolling steel door. He testified he felt a soreness during the hour or hour and one-half that he was unloading four or five doors." Nevertheless, the deputy commissioner concluded that, because of the decision of the Court of Appeals in *Bradley* v. *Philip Morris, supra*, it was unnecessary for the claimant to establish that he was injured as a result of a "specific action." The deputy commissioner noted that the claimant "must prove an identifiable incident but the Court of Appeals has held an identifiable incident is 'a particular

work activity which takes place within a reasonably discrete time frame' [citing *Bradley*]. In *Bradley*, that Court held three hours could constitute a reasonably discrete time frame."

The deputy commissioner awarded compensation and the full commission, also citing *Bradley*, affirmed. By order entered November 29, 1988, the Court of Appeals, again relying on *Bradley*, affirmed the order of the Industrial Commission.

## PITTSBURGH PLATE GLASS v. TOTTEN
### Record No. 881426

In August 1985, Robert J. Totten, the claimant, was employed as a glazier by Pittsburgh Plate Glass Industries. On August 16, he was engaged in the installation of insulated ceiling panels in a high-rise building, continuing work begun the previous day. The claimant stood on a scaffold and held the panels, each weighing 30 to 35 pounds, over his head while securing them in place with a drill and screw gun. It was a hot day and there was no ventilation or air conditioning. When beginning his work shift at 6:30 a.m., the claimant told a co-worker that he "didn't have any get-up-and-go power." In a deposition, he stated that he had told a co-worker that he "felt funny" at that time, but at the hearing he denied making the latter statement. The claimant worked steadily from 6:30 a.m. until taking a break for a snack about 9:00 a.m., at which time he began to experience pain which he thought was indigestion. He walked down from the eleventh floor to the second floor, where he rested while co-workers sent for an ambulance.

The claimant was taken to Fairfax Hospital where he was found to have an acute inferior wall myocardial infarction. He underwent a cardiac catheterization on August 22 and was not released to return to work until November 18. The medical records state that Mr. Totten's "[r]isk factors are positive for smoking and family history." He was 58 years old, and had smoked two packs of cigarettes a day since age 20. He had also consumed a case of beer per week for many years. The operative notes show that he was suffering from a 60% to 70% narrowing of one coronary artery, and 100% occlusion of another.

The deputy commissioner who heard the evidence concluded that the "work activity engaged in by the claimant from 6:30 to 9:30 a.m. on August 16, 1985 qualifies as an injury by accident." Relying on *Bradley* v. *Philip Morris*, *supra*, the deputy commissioner awarded compensation. On appeal, the full commission af-

firmed the award, finding that "the claimant came to work on that morning with significant coronary artery disease and that the vigorous activity in which he engaged for a period of approximately two and one-half hours resulted in coronary insufficiency . . . [which] was, in fact, a specific physical change . . . ." The commission analogized the case to *Morris* v. *Morris*, 4 Va. App. 193, 355 S.E.2d 892 (1987), discussed above. By order entered December 12, 1988, the Court of Appeals affirmed, relying on *Morris*.

## INJURY BY ACCIDENT

The fundamental purpose of the Workers' Compensation Act, first adopted in 1918 as a virtual copy of an Indiana statute, was compensation for accidental injuries within the hazards of the employment. *Feitig* v. *Chalkley*, 185 Va. 96, 102, 38 S.E.2d 73, 75 (1946). In 1944, a carefully limited coverage for occupational diseases was added to the Act. Acts 1944, c. 77. The Act has always required the claimant to carry the burden of proving, by a preponderance of the evidence, *A. N. Campbell & Co.* v. *Messenger*, 171 Va. 374, 379, 199 S.E. 511, 514 (1938), (1) an "injury by accident" or occupational disease, (2) arising out of, and (3) in the course of, the employment. Code § 65.1-7. The Act expressly excludes coverage for disease in any form unless the disease results from those causes. *Id.*

The General Assembly created the Workers' Compensation scheme as a carefully balanced societal exchange between the interests of employers, employees, insurers, and the public. Although a prolific source of litigation, that legislative balance has served society well for more than 70 years. In striking the balance between those competing interests, the General Assembly had, and has, the option of expanding the limits of coverage to a point where the Workers' Compensation scheme would amount to a general plan of health insurance. The General Assembly has declined frequent invitations to do so, *see, e.g., The Lane Co., Inc.* v. *Saunders*, 229 Va. 196, 199 n.*, 326 S.E.2d 702, 703 n.* (1985), and this Court, while recognizing that the remedial purpose of the Act entitles it to liberal construction, has consistently declined similar invitations. *See, e.g., Rust Engineering Co.* v. *Ramsey*, 194 Va. 975, 980, 76 S.E.2d 195, 198 (1953).

Perhaps the most frequently recurring invitation to expand the coverage of the Act has been extended by those who wish to broaden the meaning of the statutory term "injury by accident" to

include injuries which, although work-related, are either gradually incurred or sustained at an unknown time.

It is apparent from the language employed by the drafters of the Act that it was originally intended to provide coverage for the most frequently recurring kinds of industrial accidents, *e.g.*, injuries immediately resulting from hazards of the workplace such as blows from falling objects; injuries from contacts of the body with operating machinery or corrosive chemicals; falls from ladders, catwalks, and the like. That was evidently the understanding generally shared by the bench, the bar, and the Industrial Commission for the first quarter-century of the Act's application, because no case involving a gradually incurred injury came to this Court until *Aistrop* v. *Blue Diamond Coal Co.*, 181 Va. 287, 24 S.E.2d 546 (1943). Even then, the question was presented in a tort case by a plaintiff who argued that such injuries were outside the purview of the Act, rather than within it.

■ In *Aistrop*, a deceased coal miner's personal representative sued the miner's employer at common law, alleging that the miner had died as a result of the employer's negligence in failing to provide sufficient ventilation in the mine. The allegations were that poisonous gases entered the miner's lungs ·

> producing no traumatic effect, but gradually suffocating and poisoning [the miner], which after a lapse of time and continued exposure to said gases and fumes resulted in a weakening of [his] body . . . whereupon his condition gradually grew worse and after a time he was asphyxiated and suffocated and did then and there die.

*Id.* at 290, 24 S.E.2d at 547.

The employer demurred, contending that workers' compensation was the sole remedy. The trial court sustained the demurrer, holding that the motion for judgment alleged an "injury by accident" within the Act. We reversed, holding that the Act did not cover injuries gradually incurred, and that common-law remedies were still available for such claims.

■ In *Aistrop*, we quoted with approval the following language from a law review article based upon English decisions:

> The injury, to be regarded as "by accident," must be received . . . at a particular time and in a particular place and

by a particular accident. And the accident must be something the date of which can be fixed. It is not enough that the injury shall make its appearance suddenly at a particular time and upon a particular occasion . . . [I]njury of gradual growth, . . . not the result of some particular piece of work done or condition encountered on a definite occasion, but caused by the cumulative effect of many acts done or many exposures to conditions prevalent in the work, no one of which can be identified as the cause of the harm, is definitely excluded from compensation.

*Id.* at 293, 24 S.E.2d at 548 (footnotes omitted) (quoting Bohler, A Problem in the Drafting of Workmen's Compensation Acts, 24 Harvard Law Review 328, 342-43 (1912)). We further observed that there were two reasons for the rule: (1) if the time of the causative event cannot be fixed, the employer will be unable to investigate the claim and defend it; (2) "allowing compensation for injuries gradually received would impose upon the last employer the burden of pensioning every workman worn out or invalided by unhealthful exposure on the part of former employers." *Id.* The second reason mentioned in *Aistrop* suggests a third, particularly cogent today: allowing compensation in such cases would impose a substantial deterrent to the employment of older workers.

*Aistrop* was decided two years before the General Assembly added limited coverage for occupational diseases to the Act, and to that extent, the *Aistrop* rule was modified. As we noted in *Saunders*, however, the General Assembly, despite repeated invitations to do so, has made no change in the *Aistrop* rule with respect to injuries gradually incurred, notwithstanding the passage of 47 years.

■ Our decisions have uniformly followed and applied the *Aistrop* rule. *See, e.g., Tomko* v. *Michael's Plastering*, 210 Va. 697, 173 S.E.2d 833 (1970) (herniated disc diagnosed after repeated heavy lifting; gradually increasing soreness not proof of "obvious sudden mechanical or structural change"); *Badische Corp.* v. *Starks*, 221 Va. 910, 275 S.E.2d 605 (1981) (same; where employee cannot identify particular movement or action causing injury, compensation not recoverable); *VEPCO* v. *Cogbill*, 223 Va. 354, 288 S.E.2d 485 (1982) (lumbar strain developed from prolonged sitting in straight-backed chair; not compensable because

no sudden, obvious mechanical or structural change shown); *The Lane Co., Inc.* v. *Saunders*, 229 Va. 196, 326 S.E.2d 702 (1985) (herniated disc diagnosed after unusual repetitive heavy lifting followed by gradually developing pain; not compensable because no accident, identifiable incident, or sudden precipitating event shown); *Kraft Dairy Group* v. *Bernardini*, 229 Va. 253, 329 S.E.2d 46 (1985) (injury caused by cumulative trauma due to repetitive exertions not compensable).

In *Saunders*, we considered an employer's appeal from a decision of the Industrial Commission wherein the Commission had adopted the view that where an employee does work that is unusually strenuous, and sustains within a "few hours" an injury which physicians relate to the unusual exertion, the unusual nature of the work, the prompt onset of symptoms, and the medical opinion as to causal relationship, would, taken together, amount to sufficient proof of an "injury by accident" within the Act. We rejected that view, observing that:

> Such a distinction would, of course, open the prospect of compensation benefits to many workers who develop physical or mental impairment while engaged in unusually strenuous, repetitive, or stressful work, without the necessity of proving any particular causative incident or event. Such a state of law may be highly desirable from the standpoint of social policy, but it would represent a marked change from the settled rule in Virginia. Policy determinations of this nature are peculiarly within the province of the General Assembly.

*Saunders*, 229 Va. at 198-99, 326 S.E.2d at 703 (footnote omitted).

■ Although we have continued to adhere to the foregoing views, the Court of Appeals embarked upon a different course in the same year *Saunders* and *Bernardini* were decided. In *Bradley* v. *Philip Morris*, the Court of Appeals considered the claim of an employee who developed a back strain after doing unusually strenuous work for three hours. The Court of Appeals wrote: "We do not understand the term 'identifiable incident' [as required by *Saunders*] to mean an event or activity bounded with rigid temporal precision. It is, rather, a particular work activity which takes place within a reasonably discrete time frame." *Bradley*, 1 Va.

App. at 145, 336 S.E.2d at 517. The court concluded that the employee's three hours of "work activity" met that test.

The foregoing statement in *Bradley* was *dictum*, because the Court of Appeals ultimately denied compensation on the ground that the claimant had not carried his burden of proving that his injury was work-related. Nevertheless, the Industrial Commission and the Court of Appeals thereafter relied on the *dictum* in *Bradley* in finding that claimants who had been subjected to work-related stress for periods up to three hours in length had carried the burden of proving an "injury by accident." *See, e.g., Woody* v. *Mark Winkler Management, Inc.,* 1 Va. App. 147, 336 S.E.2d 518 (1985) (heart attack resulting from stress over three-week period did not meet the test); *Pendleton* v. *Flippo Construction Co.,* 1 Va. App. 381, 339 S.E.2d 210 (1986) (lumbar strain developing gradually over an eight-hour work day did not meet the test); *McFeely Hardwoods & Lumber* v. *Miller,* 4 Va. App. 334, 358 S.E.2d 178 (1987) (claimant carried a heavy object; on next day felt pain which gradually increased during ensuing twelve days; diagnosed as herniated disc; held to meet the test); also the three cases under consideration here.

Counsel at the bar of this Court argue that the foregoing line of cases has resulted in the application of a "three hour test" in proceedings before the Industrial Commission: any work-related injury resulting from stress which lasts three hours or less is deemed an "injury by accident"; injuries resulting from stress extending over a longer period fail to meet the test. However that may be, it is clear that *Bradley* and its progeny have resulted in a marked departure from the rule in *Aistrop,* leading for the first time to awards of compensation for gradually incurred injuries, without any legislative revision of the Act. We adhere to the view that it is peculiarly within the province of the General Assembly to adjust the balance of competing interests inevitably involved when such a fundamental policy change is contemplated.

■ For the reasons we expressed in *Saunders,* quoted above, we reject the reasoning contained in the *dictum* in *Bradley.* In determining that the requirement of an "identifiable incident" did not mean an event "bounded with rigid temporal precision" but rather meant a "work activity" within a "reasonably discrete time frame," the Court of Appeals misinterpreted *Saunders.* Our decisions have always required proof of an "accident, identifiable incident, or sudden precipitating event." *Saunders,* 229 Va. at 199,

326 S.E.2d at 703-04. Such events are inevitably "bounded with rigid temporal precision."

It is true that we have described such an event as an "identifiable incident that occurs at a *reasonably definite time*." *Id.*, 326 S.E.2d at 703 (emphasis added). The italicized words allow for the problem of proof: an injured employee may know that he fell from a ladder just before lunchtime, but he may not know whether he fell at 11:35 a.m. or 11:45 a.m. He is only required to fix the time of the occurrence with reasonable accuracy, although the causative event was in fact "bounded with rigid temporal precision."

■■■■ In each of the three cases now before us, the injury *made its appearance* suddenly "at a particular time and upon a particular occasion." But, as we said in *Aistrop*, that is not enough. In order to carry his burden of proving an "injury by accident," a claimant must prove that the *cause* of his injury was an *identifiable incident or sudden precipitating event* and that it resulted in an *obvious sudden mechanical or structural change in the body*. *Saunders*, 229 Va. at 199, 326 S.E.2d at 703-04 (quoting *VEPCO v. Cogbill*, 223 Va. 354, 356, 288 S.E.2d 485, 486 (1982)). None of the claimants in the cases before us carried that burden. We hold that injuries resulting from repetitive trauma, continuing mental or physical stress, or other cumulative events, as well as injuries sustained at an unknown time, are not "injuries by accident" within the meaning of Code § 65.1-7.

Accordingly, we will reverse the decisions of the Court of Appeals, vacate the awards of compensation, and enter final judgment for the employers in each of the three cases.

Record No. 870592 *Reversed and final judgment.*
Record No. 881394 *Reversed and final judgment.*
Record No. 881426 *Reversed and final judgment.*