**Alexandria**

IMPERIAL TRASH SERVICE, et al.

v.

GAIL DOTSON, et al.

No. 1191-93-4

Decided July 5, 1994

COUNSEL

Charles F. Midkiff (Midkiff & Hiner, P.C., on briefs), for appellants.

Christopher Paul Schewe, for appellees.

OPINION

**COLEMAN, J.**—We hold that credible evidence supports the Virginia Workers' Compensation Commission's finding that Thurman Dotson, the employee, suffered from heatstroke that arose out of and during the course of his employment. We hold that the commission did not err in relying on the opinion of the employee's attending physician that the consequences of the employee's heatstroke caused his death. Accordingly, we affirm the decision of the

commission.

On July 10, 1990, Thurman Dotson began his first day of work for the Imperial Trash Company, picking up recyclable materials during the morning hours. George Mickelson accompanied Dotson to teach the new employee the route and to do most of the heavy lifting. Dotson drove the truck with the windows down. It was not air conditioned. After Dotson and Mickelson had picked up material, weighing fifteen to thirty pounds, at over seven hundred houses in 86 degree temperature, Dotson became confused and began losing his balance. Dotson said, "this heat has gotten to me." Mickelson, who realized that Dotson was in some distress, placed Dotson in the shade of a tree and finished the route alone. When Mickelson returned to the tree, Dotson was in critical condition. Within minutes, Dotson was taken to the hospital, unconscious, with a body temperature of 110 degrees. While at the hospital, Dotson's condition improved; he regained consciousness and was able to answer questions. However, Dotson died in the hospital of cardiac arrest seventeen days later.

Dotson's physician, Dr. Michael Tsun, filed a report stating that the cause of death was "acute deep vein thrombosis and pulmonary embolism as a result of severe dehydration and heatstroke." At the time of Dr. Tsun's report, he knew that Dotson's medical history included the fact that he was obese, was on anti-depressant medication, had arteriosclerosis, and had previously suffered a pulmonary embolism. Dr. Tsun took the history twenty-four hours after Dotson was admitted to the hospital.

At the compensation hearing, two physicians opined that Dotson had not suffered a heatstroke but that he suffered from Neuroleptic Malignant Syndrome (NMS) instead, a condition with symptoms that mimic heatstroke. At the time of the episode, Dotson was taking anti-depressant medications, which the doctors said impair a person's ability to regulate body temperature. Dotson had arteriosclerosis and a history of pulmonary emboli on two occasions. Based on these facts, the two physicians concluded that, in their opinions, Dotson did not die from the consequences of heatstroke.

The commission found that Dotson died as a result of cardiac arrest caused by heatstroke suffered on July 10, 1990, in the course of and arising out of his employment with Imperial Trash

Company.

To qualify for workers' compensation benefits, an employee's injuries must result from an injury or accident arising out of and in the course of his employment. *Pinkerton's, Inc. v. Helms*, 242 Va. 378, 380, 410 S.E.2d 646, 647 (1991). An employee must prove a causal connection between his particular work conditions and the resulting injury. *Brown v. Reed*, 209 Va. 562, 564, 165 S.E.2d 394, 396-97 (1969). "[I]f the injury or death results from, or is hastened by, conditions of employment exposing the employee to hazards to a degree beyond that of the public at large, the injury or death is construed to be accidental." *Robinette v. Kayo Oil Co.*, 210 Va. 376, 379, 171 S.E.2d 172, 175 (1969).

The employer contends that Dotson did not suffer a heatstroke but that, even if he did, the heatstroke was not caused by his work. According to the employer, the nature of Dotson's duties did not place him at greater risk for heatstroke beyond that to which the public is normally exposed.

"[W]here there is a conflict of evidence [concerning cause of death], the Commission's finding of fact is conclusive" when supported by credible evidence. *Byrd v. Stonega Coke & Coal Co.*, 182 Va. 212, 220, 28 S.E.2d 725, 729 (1944). A conflict in the medical evidence exists as to whether Dotson suffered a heatstroke or died of NMS. "The Commission's factual findings are 'conclusive and binding' . . . and a question raised by 'conflicting expert medical opinions' is 'one of fact.'" *Eccon Constr. Co. v. Lucas*, 221 Va. 786, 790, 273 S.E.2d 797, 799 (1981) (citation omitted). The determination of causation is a factual finding that will be upheld on appeal if credible evidence supports the finding. *C.D.S. Constr. Servs. v. Petrock*, 218 Va. 1064, 1070, 243 S.E.2d 236, 240 (1978).

Although the doctors' opinions are in conflict as to whether Dotson suffered a heatstroke, credible evidence supports the commission's finding that he did and that death resulted as a consequence of the heatstroke. Dr. Tsun was Dotson's attending physician. He treated Dotson just after he entered the hospital. Dr. Tsun was the only physician who had treated and examined Dotson. Dr. Tsun knew Dotson's medical history. He knew Dotson had taken lithium. He knew that Dotson had previously suffered an embolism. Dr. Tsun was aware of the possibility of Neuroleptic

Malignant Syndrome (NMS). Based on tests, Dr. Tsun determined that Dotson did not have blood clots associated with NMS. Dr. Tsun testified that Dotson suffered from symptoms associated with severe heatstroke. George Mickelson's testimony concerning Dotson's condition and symptoms supports that finding. George Mickelson worked closely with Dotson the entire morning before Dotson's collapse. Both Dr. Tsun's and Mickelson's testimony provided credible evidence to support the commission's finding that Dotson, as a result of his exertion in the heat, became dehydrated and suffered a heatstroke and that as a consequence of the heatstroke, he died.

We also must decide whether the heatstroke was caused by the condition of employment, as employee argues, or would have occurred under normal circumstances because of conditions to which the public is customarily exposed. Credible evidence exists to support the commission's finding that Dotson's heatstroke was caused or "hastened by, conditions of employment [that] expose[d] the employee to hazards to a degree beyond that of the public at large." *Robinette*, 210 Va. at 379, 171 S.E.2d at 175. Even though the public may also have been exposed to the heat the morning Dotson collapsed, it was not the heat alone that caused Dotson's heatstroke and death.

The commission found that Dotson's employment exposed him to hazards over and above those to which the public is exposed. The commission noted that "the public at large was not working within the confines of a [non-air-conditioned] truck, repeatedly getting into and out of a truck, nor emptying from 350 to 400 containers into [it]. . . . This work was performed in temperatures which had reached almost 90 degrees at the time Dotson collapsed. In addition, the humidity had reached approximately 57 percent."

While the employer argues that the evidence did not support the commission's factual finding that Dotson emptied 350 to 400 containers, the significance of the evidence, as recited by the commission, is not the number of containers he lifted, but that his employment required him to do significant work and exertion over a relatively short period of time in hot, humid conditions. Dotson was obese, arteriosclerotic, and on medication, all factors that placed him at greater risk for heatstroke. The commission could find, as it did, that the combination of the heat, the humidity, the

physical exertion, and working in the non-air-conditioned truck caused Dotson to become dehydrated and to suffer a heatstroke. "An accident may have more than one proximate cause." *Wyle v. Professional Servs. Indus.*, 12 Va. App. 684, 689, 406 S.E.2d 410, 413 (1991). Even though Dotson's physical condition may have made him prone or more susceptible to becoming dehydrated and suffering a heatstroke, the conditions of his employment were a primary cause of the heatstroke. The employment required him to work in hot, humid conditions over a period of time, a situation to which the general public is not regularly exposed.

■ The employer further contends that even if Dotson suffered a work-related heatstroke, the condition was not sufficiently sudden to make it a compensable accident. The employer argues that gradually incurred injuries, even if work related, are not compensated by workers' compensation benefits. *Aistrop v. Blue Diamond Coal Co.*, 181 Va. 287, 293, 24 S.E.2d 546, 548 (1943). There must be "an *identifiable incident or sudden precipitating event* . . . that . . . result[s] in an *obvious sudden mechanical or structural change in the body*" for the employee's work-related injury to be compensable. *Morris v. Morris*, 238 Va. 578, 589, 385 S.E.2d 858, 865 (1989). "To constitute injury by accident [however] it is not necessary that there should be an extraordinary occurrence in or about the work engaged in." *Kemp v. Tidewater Kiewit*, 7 Va. App. 360, 363, 373 S.E.2d 725, 726 (1988) (quoting *Derby v. Swift & Co.*, 188 Va. 336, 344, 49 S.E.2d 417, 421 (1948)).

The commission did not err by finding that in Dotson's case, "a . . . *precipitating event* [existed] that . . . resulted *in an obvious sudden . . . structural change in the body.*" *Morris*, 238 Va. at 589, 385 S.E.2d at 870 (emphasis in original). Lifting heavy materials and doing strenuous work over a short period of time in hot, humid conditions were the precipitating events causing Dotson to become dehydrated and to suffer a heatstroke. The fact that Dotson lifted containers over a brief period does not make the heatstroke he suffered a "gradually incurred" injury, as the employer contends. While the Act does not compensate an employee for degenerative conditions gradually occurring that resulted from repetitive trauma in the workplace, *id.*, Dotson's heatstroke was not a gradually occurring condition. The heatstroke was a sudden change in the body that was readily attributable to "an identifi-

able incident" or "sudden precipitating event." After lifting the containers in a short period of time in hot, humid conditions, Dotson's body temperature suddenly rose to 110 degrees. The exertion of lifting the containers was the "sudden precipitating event" causing the heatstroke. Within five minutes, Dotson collapsed and was taken to the hospital. The anatomical changes in the body associated with heatstroke were an "*obvious sudden mechanical or structural change in the body.*" *Id.*[1]

The commission did not err by relying on the opinion testimony of Dr. Tsun in determining that Dotson's cause of death was related to his employment. Dr. Tsun was the only physician who had treated and examined Dotson. The other doctors had not examined Dotson.

■ When medical opinions conflict, the general rule is that when an attending physician is positive in his diagnosis of a disease, great weight will be given by the courts to his or her opinion. *McPeek v. P.W. & W. Coal Co.*, 210 Va. 185, 188, 169 S.E.2d 443, 445 (1969). Dr. Tsun made a positive diagnosis that Dotson had suffered a heatstroke. Dr. Tsun stated that Dotson's severe heatstroke "caused acute deep vein thrombosis" and that his death was the result of "severe dehydration, disseminated intravascular coagulopathy, and prolonged bedrest due to weakness and disequilibrium." The conclusion that Dotson's death was a consequence of the heatstroke is supported by medical records and tests. The commission did not err in relying on Dr. Tsun's, the treating physician's, testimony.

■ The evidence is sufficient to support the commission's finding that Dotson died as a result of heatstroke, even though he had improved before dying seventeen days after suffering the heatstroke. Once an injury is compensable, the employer is liable for the full extent of the injury; the fact that complications arise or the injury worsens does not alter the compensable nature of the injury. "When the primary injury is shown to have arisen out of and in the course of employment, every natural consequence that flows from the injury likewise arises out of the employment, unless

---

[1] Unlike *Lane Co. v. Saunders*, 229 Va. 196, 326 S.E.2d 702 (1985), where the claimant sustained a back injury over a period of two days and could not point to a "single episode of an injury," Dotson suffered heatstroke while performing job-related exertion by lifting containers in hot, humid conditions, and, within minutes, he collapsed.

it is the result of an independent intervening cause attributable to claimant's own intentional conduct." *Morris v. Badger Powhatan/ Figgie Int'l, Inc.*, 3 Va. App. 276, 283, 348 S.E.2d 876, 879 (1986).

Dr. Tsun stated that, in his opinion, Dotson suffered from severe heatstroke causing "deep vein thrombosis" that ultimately caused his death. In *Byrd*, the Supreme Court held that the claimant's death from a heart attack resulting from heatstroke was compensable. 182 Va. at 216-17, 28 S.E.2d at 729. The Court discussed the "catastrophic" effect of heatstroke on the human body and held that the claimant established a *prima facie* case for compensability. *Id.* at 217-18, 28 S.E.2d at 729-30. Like Byrd, Dotson died as a result of heatstroke, even though the immediate cause of death was an embolism. Therefore, his death is compensable.

*Affirmed.*

Fitzpatrick, J., and Hodges, S.J., concurred.