COURT OF APPEALS OF VIRGINIA


Present:  Chief Judge Moon, Judge Coleman and Senior Judge Cole
Argued at Richmond, Virginia


INTERIM PERSONNEL
AND
ZURICH AMERICAN INSURANCE COMPANY     MEMORANDUM OPINION[*] BY
                                     JUDGE MARVIN F. COLE
v.   Record No. 2687-96-2           MAY 20, 1997

JAMES G. TURNER


FROM THE VIRGINIA WORKERS' COMPENSATION COMMISSION

C. Ervin Reid (Wright, Robinson, Osthimer &
Tatum, on briefs), for appellants.

Zenobia J. Peoples for appellee.


Interim Personnel and Zurich American Insurance Company
(collectively "employer") appeal from a decision of the Workers'
Compensation Commission ("commission") holding them responsible
for the cost of James G. Turner's ("claimant") hip replacement
surgery.  Employer contends that the commission erred in finding
that claimant's hip injury and need for hip replacement surgery
were causally related to his compensable injury by accident.
Finding no error, we affirm the commission's decision.

### Background

On appeal, we review the evidence in the light most
favorable to the party prevailing below.  See R.G. Moore Bldg.
Corp. v. Mullins, 10 Va. App. 211, 212, 390 S.E.2d 788, 788

---

[*]Pursuant to Code § 17-116.010 this opinion is not
designated for publication.

(1990).

So viewed, the evidence established that claimant, who worked as a temporary laborer for employer, sustained an injury to his right leg in a work-related accident on September 13, 1995. He initially complained of a "popping" in his right thigh. Claimant thought he had just pulled a muscle and did not immediately seek medical attention. He continued working through September 21, 1995, by which time the pain in his leg had worsened to the point that his supervisor sent him home.

On September 27, 1995, the claimant formally notified the employer of the injury, although he had reported it to his supervisor on September 13, 1995. Employer made an appointment for claimant to see Dr. Arthur D. Bragg at Metropolitan Hospital on September 28, 1995. At the time, claimant complained of pain in his right leg and in the right groin area. Dr. Bragg diagnosed claimant as having an injured sartorius muscle in the upper half of the right thigh.

Claimant sought medical attention again on October 2, 1995. Claimant continued to complain of muscle pain in the right thigh. The treating physician referred claimant to Dr. Vincent Dalton, an orthopedist.

Claimant saw Dr. Dalton on October 4, 1995, and complained of right hip pain. Dr. Dalton wrote that claimant's right hip pain "began on 9-13-95 at work after he got trapped between two pallets and suffered a twisting injury to his rt. hip." Dr.

Dalton continued that "[x]-rays of the rt. hip show a rather large area of what appears to be avascular necrosis [("AVN")] with a large area of collapse and femoral-head incongruity.  This appears to be an acute subchondral collapse."  Dr. Dalton confirmed his diagnosis of osteonecrosis after reviewing the results of an MRI conducted by Dr. Maurice F. Mullins on October 9, 1995.[2]  On October 12, 1995, Dr. Dalton released claimant to perform light duty work, but advised that claimant would require hip replacement surgery in the near future.

Claimant had no prior history of hip problems.  Theodora Parham, claimant's former supervisor, testified that, prior to September 13, 1995, claimant had not complained to her of hip or groin pain.  She also testified that he did not begin limping until after the accident.  On the day Parham sent claimant home from work, he was in such pain that Parham "could literally almost feel it [herself]."

At employer's request, Dr. Bernard Lublin conducted a review of claimant's medical records.  In his subsequent report, Dr. Lublin wrote:

Dr. Dalton's evaluation on 10/4/95 indicates x[-]rays demonstrating "a large area of

---

[2]Dorland's Illustrated Medical Dictionary, 26th ed. (1985) defines necrosis as "the sum of the morphological changes indicative of cell death and caused by the progressive degradative action of enzymes . . . ."  Dorland's further identifies osteonecrosis as "death, or necrosis, of bone," and avascular necrosis as cell death "due to deficient blood supply."

> collapse and femoral head incongruity[."]
> This indicates a <u>longstanding problem</u>. . . .
> This avascular necrosis, therefore,
>   pre-existed the work related injury, and
> definitive treatment (i.e. total hip
> replacement) is therefore treatment for a non
> work related problem.

Dr. Lublin continued, however, that "[t]he injury of 9/13/95 caused an acute 'flare-up' of the avascular necrosis. The acute flare-up is work related . . . ."

The deputy commissioner relied upon Dr. Lublin's report to find that claimant failed to prove a causal connection between the September 13, 1995 accident and the condition requiring the hip surgery. The deputy commissioner also found "that Dr. Dalton has [not] produced preponderating evidence, within reasonable medical probability, that the needed total hip replacement is from the 1995 accident."

In reversing the deputy commissioner on this issue, the full commission noted that claimant had no prior history of hip problems. The commission relied upon Dr. Dalton's opinion that the accident triggered "an acute subchondral collapse" to find that claimant met his burden of proving causation.

### Analysis

"Pursuant to Code § 65.2-101, workers' compensation benefits are extended only to injuries arising out of and in the course of employment." <u>Bartholow Drywall Co. v. Hill</u>, 12 Va. App. 790, 793, 407 S.E.2d 1, 2 (1991). "Causation is an essential element which must be proven by a claimant in order to receive an award

4

of compensation for an injury by accident." AMP, Inc. v. Ruebush, 10 Va. App. 270, 274, 391 S.E.2d 879, 881 (1990). "The determination of causation is a factual finding that will be upheld on appeal if credible evidence supports the finding." Imperial Trash Serv. v. Dotson, 18 Va. App. 600, 603, 445 S.E.2d 716, 718 (1994).

Generally, when medical opinions conflict, we give greater weight to the opinion of the treating physician. See id. at 606, 445 S.E.2d at 720. The commission relied upon the report of claimant's treating orthopedist to find a causal connection between the September 13, 1995 accident and claimant's AVN. This finding is supported by claimant's testimony that he had no history of hip problems before the accident, and is corroborated by the testimony of claimant's immediate supervisor. Dr. Dalton's opinion and the medical records provide credible evidence to support the commission's finding that claimant's need for hip replacement surgery is causally related to the September 13, 1995 injury by accident.

This result applies even were it to be conceded that claimant's AVN was a pre-existing condition. "It is well established that the employer takes the employee as the employer finds that employee, even where the employee suffers from some physical infirmity." Williams Industries, Inc. v. Wagoner, 24 Va. App. 181, 187-88, 480 S.E.2d 788, 791 (1997). "A finding that a pre-existing condition was 'accelerated or aggravated' by

5

an injury sustained in an industrial accident establishes a causal connection between the injury and disability and the 'disability resulting therefrom is compensable under the Workers' Compensation Act.'"  Southern Iron Works Inc. v. Wallace, 16 Va. App. 131, 134, 428 S.E.2d 32, 34 (1993) (quoting Olsten of Richmond v. Leftwich, 230 Va. 317, 320, 336 S.E.2d 893, 895 (1985)).

"Even if the accident would not have been sufficient to cause the injury in the absence of a preexisting disease, that fact will not provide the employer with a defense."  Kemp v. Tidewater Kiewit, 7 Va. App. 360, 363-64, 373 S.E.2d 725, 726-27 (1988).  See Ellis v. Commonwealth, 182 Va. 293, 305, 28 S.E.2d 730, 735-36 (1944) (finding since latent sarcoma only became symptomatic after accident, it was impossible to separate injury from the fall from aggravation of the latent sarcoma).  "On the other hand, an injury due solely to the natural progression of the existing disease is not compensable."  Pendleton v. Flippo Construction Co., 1 Va. App. 381, 384, 339 S.E.2d 210, 212 (1986).

The commission accepted the testimony of claimant and his witness and the opinion of Dr. Dalton in finding causation between the September 13 accident and the need for hip replacement surgery.  While Dr. Lublin concluded that claimant's AVN was a pre-existing condition, he was still of the opinion that a causal link existed between claimant's September 13

6

accident and the flare-up of the AVN. Accordingly, we find there is credible evidence in the record to support the commission's finding of causation between the work-related injury and the need for hip replacement surgery.

For the reasons stated, we affirm the commission's decision.

Affirmed.