COURT OF APPEALS OF VIRGINIA

Present:  Judges Benton, Willis and Annunziata
Argued at Richmond, Virginia


SOUTHERN EXPRESS AND HARLEYSVILLE
 MUTUAL INSURANCE COMPANY
                                        OPINION BY
v.  Record No. 1316-97-2        JUDGE JAMES W. BENTON, JR.
                                     FEBRUARY 3, 1998
CLARA LOUISE GREEN


        FROM THE VIRGINIA WORKERS' COMPENSATION COMMISSION

            S. Vernon Priddy, III (William B. Judkins;
            Sands, Anderson, Marks & Miller, on brief),
            for appellants.

            No brief or argument for appellee.



     Southern Express contends the Workers' Compensation

Commission erred by awarding benefits to Clara Louise Green for

injuries she sustained while working in a refrigerated room at a

Southern Express convenience store.  Relying upon Morris v.

Morris, 238 Va. 578, 385 S.E.2d 858 (1989), and The Stenrich

Group v. Jemmott, 251 Va. 186, 467 S.E.2d 795 (1996), Southern

Express argues that Green's injury was not an "injury by

accident" within the meaning of Code § 65.2-101 because it was a

gradually incurred injury or a cumulative trauma condition.  We

disagree, and we affirm the commission's award.

                            I.

     The evidence proved that on June 22, 1996, Green was working

at a Southern Express convenience store stacking beer and soft

drinks in a refrigerated room.  Green worked in the refrigerated

room from 2:00 a.m. until 6:00 a.m. wearing only a short-sleeved

shirt and no gloves.  She testified that she was unable to leave the room because she could not get the door open.  She further testified that when she came out of the refrigerated room at the end of her work shift, she was cold and shivering.  She testified that her "hands had gotten all balled up and [her] face had begun to -- had sores on it."  Later that day, she went to the hospital.

The store manager testified that Green had undergone a thirty to forty-five minute training session in the refrigerated room because Green had not previously worked in the refrigerated room.  After the training session, Green worked in the refrigerated room between two and three hours shelving merchandise.  The manager testified that the door to the refrigerated room had no lock on it and that Green came out of the area while she was working "a minimum of once, probably twice."  He said Green did not complain to him after she completed her work.

According to the medical records, Green went to the hospital several hours after her work shift ended, complaining of pain in her fingers, hands, left elbow and left forearm.  The doctor diagnosed "superficial frostbite of fingers."  The medical reports indicated that Green, an insulin dependent diabetic, was treated for frostbite in both hands and advised to wear gloves if exposed to the cold again.  A podiatrist diagnosed Green with chilblains caused by long-term exposure to cold temperature.  A

dermatologist concurred that Green's history indicated a "cold injury consistent with chilblains."

Green filed a workers' compensation claim, alleging injuries resulting from her exposure to the cold at work.  The commission found that Green sustained chilblains from cold exposure at work.  Citing Byrd v. Stonega Coke & Coal Co., 182 Va. 212, 28 S.E.2d 725 (1944), the commission ruled that the testimony and medical reports established an "injury by accident" arising out of and in the course of Green's employment.  Southern Express appeals from the decision awarding Green the reasonable costs of her medical care.

                                II.

"[G]enerally it has been held that the term 'injury,' 'personal injury,' or 'personal injury by accident,' caused by excessive heat [or] cold . . . is embraced within the meaning of the [Act]."  Id. at 215, 28 S.E.2d at 727.  In 1944, when the Supreme Court applied that rule to uphold an award to an employee in Byrd, the Act required an employee who sought compensation for an injury to prove an "injury by accident arising out of and in the course of the employment."  182 Va. at 215, 28 S.E.2d at 727.  The current version of the Act has the identical language.  See Code § 65.2-101.

In Byrd, an employee worked for ten hours around coke ovens that reached a temperature of 2,500 degrees.  182 Va. at 214-15, 28 S.E.2d at 726-27.  While the employee was breaking coke and

pulling it from the ovens, he collapsed and died.  Noting that "[a]s an original proposition, it would seem logical to hold that the facts as related, do not disclose an 'accident,'" id., the Court held, however, that "if the injury or death results from, or is hastened by, conditions of employment exposing the employee to hazards to a degree beyond that of the public at large, the injury or death is construed to be accidental within the meaning of the statute."  Id. at 216, 28 S.E.2d at 727.  In holding that the employee had made out a prima facie case for compensation, the Court noted that the employee's exposure to extreme heat was the cause of the employee's death because "it is a matter of common knowledge that frequently persons apparently normal collapse from exposure to extreme heat or cold."  Id. at 217, 28 S.E.2d at 727.

In a later case, Robinette v. Kayo Oil Co., 210 Va. 376, 171 S.E.2d 172 (1969), the Court denied compensation to an employee who contracted pneumonia after working for several days "without boots, overshoes or raincoat in rainy, snowy and cold weather during which there was standing water around the gasoline pumps" where the employee worked.  Id. at 377, 171 S.E.2d at 173.  Ruling that the employee did not prove an injury by accident, the Court noted the following:

> In the present case [the employee] contracted pneumonia from exposure to the elements in the regular course of his employment.  He was engaged in carrying out the duties for which he had been employed for some six months. There was nothing catastrophic or extraordinary in his exposure, nor did it

> arise under emergency conditions. His exposure was neither unexpected nor unforeseen but was intentional, deliberate and protracted. There is nothing to distinguish his activities from those of other service station attendants or other workers who are required to do outside work in all kinds of weather.

Id. at 381, 171 S.E.2d at 176.

Recently, this Court discussed these "exposure" decisions in Imperial Trash Service v. Dotson, 18 Va. App. 600, 445 S.E.2d 716 (1994), and held that the more recent Supreme Court case of Morris v. Morris, 238 Va. 578, 385 S.E.2d 858 (1989), did not preclude recovery when the evidence proved that the employee suffered a heatstroke while working in warm weather. The evidence in Dotson proved the employee suffered an embolism from heatstroke from the following activity:

> On July 10, 1990, . . . Dotson drove the truck with the windows down. It was not air conditioned. After Dotson and Mickelson had picked up material, weighing fifteen to thirty pounds, at over seven hundred houses in 86 degree temperature, Dotson became confused and began losing his balance. Dotson said, "this heat has gotten to me." Mickelson, who realized that Dotson was in some distress, placed Dotson in the shade of a tree and finished the route alone. When Mickelson returned to the tree, Dotson was in critical condition. Within minutes, Dotson was taken to the hospital, unconscious, with a body temperature of 110 degrees.

18 Va. App. at 602, 445 S.E.2d at 717.

In Dotson, this Court ruled that the conditions of employment caused the heatstroke because the employee was "work[ing] in hot, humid conditions over a period of time, a

situation to which the general public is not regularly exposed."
Id. at 605, 445 S.E.2d at 719.  Furthermore, this Court held
that "[t]he fact that [the employee] lifted containers over a
brief period does not make the heatstroke [the employee] suffered
a 'gradually incurred' injury, as the employer contends."  Id.

After our Dotson decision, the Supreme Court in The Stenrich
Group v. Jemmott, 251 Va. 186, 199, 467 S.E.2d 795, 802 (1996),
and Middlekauff v. Allstate Ins. Co., 247 Va. 150, 154, 439
S.E.2d 394, 397 (1994), reiterated the view that a gradually
incurred injury is not an injury by accident within the meaning
of the Act.  Both Jemmott and Middlekauff cite Morris, which
states that "injuries resulting from repetitive trauma,
continuing mental or physical stress, or other cumulative events,
as well as injuries sustained at an unknown time, are not
'injuries by accident' within the meaning of Code § 65.1-7."  238
Va. at 589, 385 S.E.2d at 865.  See Allied Fibers v. Rhodes, 23
Va. App. 101, 104, 474 S.E.2d 829, 830 (1996) (hearing loss
resulting from prolonged exposure to industrial noise is
noncompensable gradually incurred injury).  But see Code
§ 65.2-400(C) (amended in 1997 to state that "[h]earing loss and
the condition of carpal tunnel syndrome are not occupational
diseases but are ordinary diseases of life as defined in [Code]
§ 65.2-401").

Awarding Green medical treatment for her injuries, the
commission cited Byrd and noted that "[i]t is well established

- 6 -

that exposure to cold or hot temperatures resulting in conditions such as frostbite or heatstroke may constitute an injury by accident." Indeed, that is precisely the holding in Byrd. See 182 Va. at 217, 28 S.E.2d at 727. Because the Supreme Court has not expressly overruled Byrd, we are unable to conclude that the unequivocal rule in Byrd has been overruled sub silento by the current line of decisions represented by Morris, Jemmott and Middlekauff. Those cases did not change the elements of injury by accident as explained in Byrd.[1] Accordingly, we hold that the commission did not err when it concluded that a condition resulting from exposure to extreme temperatures may still constitute an "injury by accident."

## III.

Factual findings by the commission are conclusive and binding on appeal where credible evidence exists to support these

---

[1] We note that other states have held that injury caused by exposure to extremes of heat or cold constitute an exception to the "gradually incurred" injury rule. For example, the Alabama courts hold that the "concept of accident contemplates a reasonably definite period of time during which the accident manifests itself, rather than a gradual disintegration or deterioration." Buchanan Lumber Co. v. Edwards, 531 So.2d 1, 2 (Ala. Civ. App. 1988). However, the Alabama Supreme Court has also held that an employee's death was caused by an "accident" within the meaning of the workers' compensation statute when the employee suffered an injury and died from "severe heat exhaustion." See Ex parte Neal, 423 So.2d 850, 853 (Ala. 1982).

"Other jurisdictions hold, with virtual unanimity, that when the conditions of employment expose the claimant to extreme heat or cold, injuries such as heatstroke, heat exhaustion, heat prostration, sunstroke, freezing, and frostbite are considered accidental." Dillingham v. Yeargin Constr. Co., 358 S.E.2d 380, 382 (N.C. 1987). See also Holley v. Owens Corning Fiberglas Corp., 392 S.E.2d 804 (S.C. App. 1990).

findings.  Classic Floors, Inc. v. Guy, 9 Va. App. 90, 95, 383 S.E.2d 761, 764 (1989).  The commission found that Green worked in a refrigerated room for two to four hours and that Green contracted chilblains from the cold exposure in the refrigerated room.  Credible evidence in the record supports this finding.  Green's testimony established that she was without any relief from the cold temperatures because she was unable to open the door.  This was Green's first and only day working in the refrigerated room, and she did not have any protective clothing.  Green was wearing a short-sleeved shirt and no gloves when she was assigned to work in the refrigerated room for four hours.  Thus, the facts in evidence prove an extraordinary exposure that distinguishes this case from Robinette and prove Green was subjected to a greater hazard in the refrigerated room than she otherwise would have been exposed.  The harmful exposure that Green experienced was due to a particular and specific work event, as in Byrd, and was not the result of a series of events, as in Robinette.

In addition, the commission's finding that Green contracted chilblains from the cold exposure in the refrigerated room is supported by credible medical evidence.  Reports from the doctors diagnosed chilblains and related it to Green's exposure to the cold temperature in the refrigerated room.  Chilblains is a "localized erythema and doughy subcutaneous swelling caused by exposure to the cold associated with dampness, . . . usually

involving the hands, feet, ears, and face in children, the legs and toes in women, and the hands and fingers in men."  <u>Dorland's Illustrated Medical Dictionary</u> 331 (28th ed.).[2]  The medical evidence also proved that Green suffered superficial frostbite.  "Superficial frostbite . . . may be manifested as simple erythema."  <u>Dorland's Illustrated Medical Dictionary</u> 665 (28th ed.).  Both conditions were the result of sudden mechanical or structural changes in the body which occurred when Green's body reached a critical point of chilling.

The testimony and medical evidence provide credible evidence to support the commission's decision that Green suffered an "injury by accident."  Accordingly, we affirm the commission's award of the reasonable cost of Green's medical treatment for her injury.

<u>Affirmed</u>.

---

[2]"Women are more often affected than men."  Dr. Evans L. Lloyd, <u>Hypothermia and Cold Stress</u> (1996).