COURT OF APPEALS OF VIRGINIA


Present: Chief Judge Fitzpatrick, Judges Benton and Kelsey
Argued at Richmond, Virginia


DINWIDDIE (COUNTY OF) CUSTODIAL AND
 VIRGINIA MUNICIPAL GROUP
 SELF-INSURANCE ASSOCIATION

                                    MEMORANDUM OPINION[*] BY
v.   Record No. 1518-02-2          JUDGE D. ARTHUR KELSEY
                                        FEBRUARY 11, 2003
LOIS J. FERRELL


        FROM THE VIRGINIA WORKERS' COMPENSATION COMMISSION

            Ralph L. Whitt, Jr. (Michael P. Del Bueno;
            Whitt & Associates, on briefs), for
            appellants.

            B. Mayes Marks, Jr. (Marks and Williams,
            P.C., on brief), for appellee.


     The Workers' Compensation Commission awarded Lois Ferrell

benefits for physical and psychological injuries arising as a

compensable consequence of an earlier injury by accident.  On

appeal, the employer and its insurance carrier claim Ferrell's

psychological injuries cannot be fairly traced to her injury by

accident.  Finding that the commission's causation ruling rests

on credible evidence, we affirm.


---

        [*] Pursuant to Code § 17.1-413, this opinion is not
designated for publication.

I.

On appeal, "we view the evidence in the light most favorable to the prevailing party" before the commission. Tomes v. James City (County Of) Fire, 39 Va. App. 424, 429, 573 S.E.2d 312, 315 (2002); Grayson County Sch. Bd. v. Cornett, 39 Va. App. 279, 281, 572 S.E.2d 505, 506 (2002).

In 1990, Ferrell's abusive husband held Ferrell, her daughter, and her grandchildren hostage at gunpoint. Ferrell's daughter struggled with him and, in the process, fatally shot him. Despite witnessing this traumatic event, for the next ten years Ferrell led a "relatively normal lifestyle." She remained consistently employed and did not seek out or receive any psychological treatment.

In 2000, Ferrell worked for Dinwiddie County as a custodian at the Dinwiddie Courthouse. On April 26, 2000, she was buffing a floor in the courthouse when the buffer "jerked and swung her into a wall and a table countertop striking her right side." As a result, Ferrell sustained an injury to her neck and right arm. The parties stipulated that Ferrell's physical injuries were compensable.

The physical injuries caused Ferrell to be out of work until June 29, 2000, and resulted in continuing treatment by various physicians through at least May 2001. During that time she underwent surgery for a "significant lunotriquetral ligament tear"

in her right wrist and received continuing pain management for an unresolving neck sprain and myofascial pain.

On July 20, 2000, Ferrell's treating physician, Dr. Kathryn Holloway, noticed that Ferrell appeared very depressed. She referred Ferrell to Dr. P. Jagan Reddy, a psychiatrist. On August 9, Dr. James Carr, an orthopedic physician treating Ferrell's wrist injury, also "noted that her post-injury treatment was complicated by her depression."

Ferrell consulted Dr. Reddy on August 21, 2000. Dr. Reddy diagnosed Ferrell "as suffering from major depression and post-traumatic stress disorder [PTSD] as a result of the compensable injury." Dr. Reddy noted that Ferrell "was having problems dealing with the pain from her injury, she was not sleeping well and she had no money to support herself." Ferrell was also having "anxiety attacks" and was "losing control of [her] bladder." Dr. Reddy took Ferrell off light duty status, recommending that she not work in any capacity.

On August 21, 2000, Dr. Reddy admitted Ferrell to Poplar Springs Hospital for major depression and severe PTSD. Poplar Springs discharged Ferrell on September 8, 2000, and Dr. Reddy continued treating Ferrell through at least June 2001. Dr. Reddy has "never released her to work in any capacity."

Based on continuing complaints of pain, in April 2001, Ferrell was referred to Dr. Daniel C. Martin, an anesthesiologist

who practices "interventional pain management."  Dr. Martin diagnosed Ferrell with "chronic pain syndrome, sympathetically maintained pain of the right upper extremity and depression."  He testified that Ferrell not only has "anatomically correct complaints, but she also has multiple other confounding psychological problems that would make her response to even appropriate therapy indiscernible or not discernable to the patient."

Ferrell filed her initial claim for benefits with the commission on August 1, 2000.  She later withdrew her claim, resulting in a dismissal without prejudice.  On February 8, 2001, Ferrell filed an "Application for Hearing/Claim for Benefits" with the commission, but this application, likewise, was dismissed without prejudice when the employer submitted forms agreeing to pay temporary total and partial disability payments.  In April 2001, Dinwiddie filed an application for hearing alleging that Ferrell "failed to cooperate with vocational rehabilitation efforts" relating to her physical injuries and requesting that the commission "adjudicate the issue of whether Ferrell's alleged psychological disability was causally related to her April 26, 2000 incident."  The matter was heard by the deputy commissioner on September 5, 2001.

Dr. Reddy testified by deposition that he was aware of the hostage incident and shooting death of Ferrell's husband ten years

earlier and he "admitted that such a trauma could certainly produce post-traumatic stress disorder." He attributed her current condition, however, to the April 26 accident stating "that the significance of any event and its effect on a person is dictated by their action after the event." He noted that Ferrell "spent nearly eleven years" after the hostage incident "conducting a relatively normal lifestyle." Dr. Reddy concluded "that there had to be a triggering event that caused her major depression and post-traumatic stress disorder and he stated that for the claimant the triggering event was the injury on April 26, 2000."

On August 13, 2001, at her employer's request, Ferrell submitted to a psychiatric examination by Dr. Daniel E. Knowler. Dr. Knowler found Ferrell to have "significant symptoms of a depressive illness" and stated that the "traumatic nightmares and memories that were stirred would have appropriately been diagnosed as a PTSD with delayed onset." Though Dr. Knowler did not think that the PTSD revealed symptoms "from the recent injuring event," he concluded that "the injuries sustained by Mrs. Ferrell set off a cascade of events that have led to her current depressive symptoms."

The deputy commissioner found these causation opinions of Dr. Reddy and Dr. Knowler to be credible and persuasive. Noting the axiom that "the employer takes the employee as it finds her," see Williams Indus., Inc. v. Wagoner, 24 Va. App. 181, 187-88, 480

S.E.2d 788, 791 (1997), the deputy commissioner concluded that the injury on April 26, 2000, "'triggered,' 'set off a cascade of events,' 'contributed,' or 'caused' the claimant's psychological problems." The full commission concurred with this finding and affirmed the award for permanent, partial disability and medical benefits for Ferrell's PTSD and depression.

## II.

On appeal, we defer to the commission in its role as fact finder. VFP, Inc. v. Shepherd, 39 Va. App. 289, 292, 572 S.E.2d 510, 511-12 (2002). If supported by credible evidence, the commission's factual findings are "binding on appeal," Tomes, 39 Va. App. at 430, 573 S.E.2d at 315 (citation omitted), "even though there is evidence in the record to support a contrary finding." S.P. Terry Co., Inc. v. Rubinos, 38 Va. App. 624, 632, 567 S.E.2d 584, 588 (2002).

When "determining whether credible evidence exists," we cannot "retry the facts, reweigh the preponderance of the evidence, or make [our] own determination of the credibility of the witnesses." Wagner Enters. v. Brooks, 12 Va. App. 890, 894, 407 S.E.2d 32, 35 (1991). In addition, the commission's "conclusions upon conflicting inferences, legitimately drawn from proven facts, are equally binding on appeal." Watkins v. Halco Eng'g, Inc., 225 Va. 97, 101, 300 S.E.2d 761, 763 (1983).

Absent the need for statutory interpretation or other exposition of legal principle, the "actual determination of causation" constitutes a finding of fact. K&G Abatement Co. v. Keil, 38 Va. App. 744, 756-57, 568 S.E.2d 416, 422 (2002) (quoting Ingersoll-Rand Co. v. Musick, 7 Va. App. 684, 688, 376 S.E.2d 814, 817 (1989)) (internal quotations omitted). This is particularly true when the commission's opinion rests on the results of a medical diagnosis. See, e.g., Caskey v. Dan River Mills, Inc., 225 Va. 405, 411, 302 S.E.2d 507, 510 (1983).

III.

A.

In its opening brief, Dinwiddie devotes much of its argument to the assertion that "there is no credible evidence that Ferrell suffers from PTSD" and that the facts "do not support the diagnosis of PTSD." At oral argument, however, Dinwiddie withdrew this contention and challenged only the sufficiency of the commission's finding of causation.

To be compensable, a psychological injury must be "causally related to a physical injury or to a sudden shock or fright arising in the course of employment." Owens v. Virginia Dept. of Transp., 30 Va. App. 85, 88, 515 S.E.2d 348, 349 (1999); see also Anthony v. Fairfax County Dept. of Family, 36 Va. App. 98, 548 S.E.2d 273 (2001). Under the compensable consequences doctrine, when the "primary injury is shown to have arisen out of and in the

course of employment, every natural consequence that flows from the injury likewise arises out of the employment, unless it is the result of an independent intervening cause attributable to claimant's own intentional conduct."  Imperial Trash Serv. v. Dotson, 18 Va. App. 600, 606-07, 445 S.E.2d 716, 720 (1994) (quoting Morris v. Badger Powhatan/Figgie Int'l, Inc., 3 Va. App. 276, 283, 348 S.E.2d 876, 879 (1986)) (internal quotations marks omitted).  The issue "is essentially one of whether the medical evidence proves a causal connection between the primary injury and the subsequent occurrence."  Williams Indus., Inc., 24 Va. App. at 188, 480 S.E.2d at 791; see also Leonard v. Arnold, 218 Va. 210, 214, 237 S.E.2d 97, 100 (1977).[1]

In this case, Dinwiddie focuses on the PTSD condition and largely overlooks the parallel evidence demonstrating Ferrell's major depression diagnosis.  Though closely related, however, major depression and PTSD represent clinically different psychiatric diagnoses.

Three physicians treating Ferrell's physical injuries (Dr. Holloway, Dr. Carr, and Dr. Martin) noted Ferrell's

---

[1] "Where a psychological injury is at issue, the fact that the condition manifests itself symptomatically at a time later than that at which the causative incident occurred is of no moment, provided that circumstances show an 'identifiable incident [occurring] at a reasonably definite time' which causes the emotional injury."  Hercules, Inc. v. Gunther, 13 Va. App. 357, 364, 412 S.E.2d 185, 189 (1991) (quoting Morris v. Morris, 238 Va. 578, 589, 385 S.E.2d 858, 865 (1989)).

depression.  Both Ferrell's treating psychiatrist as well as the psychiatrist hired by the appellants (Dr. Reddy and Dr. Knowler) observed her to have "significant symptoms" of "major depression." These medical opinions cannot be dismissed as "inherently incredible" or "inconsistent with other facts in the record." Hercules, Inc. v. Gunther, 13 Va. App. 357, 361, 412 S.E.2d 185, 187 (1991).

On the causation issue, Dr. Reddy and Dr. Knowler both linked Ferrell's depression to her physical injuries and, by extension, to the April 26, 2000 accident.  Dr. Reddy stated that the accident was the "triggering event that caused her major depression," while Dr. Knowler stated that the injuries Ferrell suffered in the accident "set off a cascade of events that have led to her current depressive symptoms."

With respect to the PTSD diagnosis, Dr. Knowler agreed that the "traumatic nightmares and memories that were stirred would have appropriately been diagnosed as a PTSD with delayed onset." Dr. Reddy addressed the causation issue, finding that Ferrell suffered from PTSD "as a result of the compensable injury" and that the injury "triggered" the PTSD.  Accepting this opinion, the commission held:  "It is clear that the injury of April 26, 2000, was the triggering event which caused and/or contributed to the claimant's psychological problems."

Viewed in the light most favorable to Ferrell, credible evidence supports the commission's finding that Ferrell suffers both from major depression and PTSD —— two related, but distinct, compensable consequences caused by the April 26, 2000 accident.

B.

Ferrell requests that we award attorney fees to her under Code § 65.2-713(A), which grants us the authority to assess against Dinwiddie "the whole cost" of these proceedings "including a reasonable attorney's fee" if we find that these "proceedings have been brought, prosecuted, or defended without reasonable grounds." See, e.g., Lowes of Short Pump Virginia v. Campbell, 38 Va. App. 55, 62, 561 S.E.2d 757, 760 (2002) (awarding fees against employer for appealing "without reasonable grounds"). The actual calculation of such costs, if awarded, should be "fixed by the Commission." Code § 65.2-713(A).

We find this an appropriate case for a partial award of costs and fees. A significant portion of Dinwiddie's brief contested the legitimacy of Dr. Reddy's diagnosis of PTSD. In its opening brief, however, Dinwiddie failed to mention that the physician it hired to perform an independent medical exam, Dr. Knowler, agreed with Dr. Reddy's PTSD diagnosis. Though Dinwiddie rightly conceded away this issue at oral argument, the concession came too late to save Ferrell the costs of briefing the issue and preparing to refute it at oral argument. On the question whether credible

facts support Ferrell's PTSD diagnosis, we hold that Dinwiddie challenged the commission's findings on appeal without reasonable grounds.  We remand this matter to the commission to assess a fair proportion of Ferrell's costs and fees, related to the PTSD diagnosis issue, against Dinwiddie pursuant to Code § 65.2-713(A).

IV.

In sum, credible evidence supports the commission's factual findings in this case.  We thus affirm the commission and remand for assessment of costs and reasonable attorney's fees.

<u>Affirmed</u>.